**G.B. REAMS, M.D., Movant,**

v.

**Mary STUTLER, Administratrix of the Estate of Robert F. Stutler, Respondent.**

Supreme Court of Kentucky.

Dec. 14, 1982.

Kenneth Williams, Jr., Robert P. Woods, Gray, Woods & Cooper, Ashland, for movant.

Gary Gardner, James M. Auser, Louisville, Thomas M. Howe, Ashland, for respondent.

CLAYTON, Justice.

Mary Stutler, as administratrix of her husband's estate, was awarded $75,000 by a jury in Boyd Circuit Court in an action for personal injuries and wrongful death against movant, G.B. Reams, M.D. The Court of Appeals affirmed the judgment of the trial court. We granted discretionary review.

Robert Stutler, decedent, was admitted to Our Lady of Bellefonte Hospital in Ashland on May 31, 1973, for treatment of duodenal ulcers. Dr. Reams, a general surgeon, was called in consultation by decedent's family physician, Dr. John Jones. Dr. Reams performed a subtotal gastrectomy on Stutler on June 12, 1973. In addition to removing a portion of the stomach, the surgery required both ends of the stomach to be sutured together while it healed. To release pressure that could cause the stomach to burst, a condition known as a "stump blowout," one tube was inserted through Stutler's nose into his stomach and another was inserted from Stutler's side into his stomach. Vigilant monitoring and recording of the patient's condition is necessary in order to prevent occlusion of the tubes and to know whether there is leakage through the tubes.

Dr. Reams removed one of the tubes twenty-four hours after surgery. On June 14, 1973, Dr. Reams left town for three days without leaving written orders for the patient's care, though he had arranged for Dr. Wendell Lyon to fill in for any emergencies. The remaining tube was not cleaned nor properly monitored after Dr. Reams' departure and finally became clogged causing stump blow-out. Stutler's precarious condition was not known until June 15, 1973, when a nurse noticed his stomach was distended. Emergency surgery was performed seven hours later, but Stutler died on the operating table of peritonitis from gastronomy tube leakage.

■ The first question raised for our review is whether there was sufficient evidence for the trial court to submit respondent's case to the jury. In medical malpractice cases the plaintiff must prove that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused injury or death. *Blair v. Eblen,* Ky., 461 S.W.2d 370 (1970). The bare possibility of causation will not suffice. *Walden v. Jones,* Ky., 439 S.W.2d 571 (1969).

■ We find ample evidence in the record to support submitting for the jury's consideration the issue of Dr. Reams' negligence. Dr. McElhinney, also a general surgeon, explained that several times between June 12, 1973, and June 14, 1973, Dr. Reams failed to give care and treatment consistent with good and accepted medical and surgical practice in this state. A reading of Dr. McElhinney's detailed criticism of Dr. Reams' actions and omissions supports a finding that the treatment was not that of a reasonably competent practitioner.

Though it is true that neither Dr. McElhinney nor any of the other doctors who were called as expert witnesses during respondent's case in chief ever specifically stated that movant's negligence was the proximate cause of decedent's death, the medical evidence and its natural inferences established a jury question on proximate cause. Dr. McElhinney testified that one of the two tubes, through which fluids could be sucked out of the stomach during the healing process, was prematurely removed. The remaining tube was not properly irrigated or monitored for drainage, which eventually resulted in occlusion. The blockage spawned increased pressure in the stomach causing the blown duodenal stump, the complications from which decedent died. Dr. McElhinney thought proper medical and surgical care would have significantly reduced the chance of a blown stump. In any event, the warning signs should have been detected earlier, as Dr. McElhinney found evidence of peritonitis twenty-four to thirty-six hours before the emergency surgery of June 15, 1973.

Giving respondent's evidence the most favorable inferences, the evidence reasonably establishes a probable connection between Dr. Reams' alleged negligence and decedent's death. *Johnson v. Vaughn,* Ky., 370 S.W.2d 591 (1963). The trial judge properly refused to direct a verdict against respondent.

■ Movant challenges the trial judge's ruling which allowed respondent to question three of movant's expert witnesses as if upon cross-examination during presentation of her evidence in chief. Nearly every question asked by respondent was leading. Movant's objection rests not on respondent's calling his expert witnesses but on the trial judge's decision to allow the questioning to proceed as if upon cross-examination. Civil Rules 43.05 and 43.06 allow leading questions to be asked when:

1) the witness called to testify is unwilling or hostile;

2) the questioning occurs during cross-examination by the adverse party;

3) special circumstances make it appear that the interests of justice require it;

4) the witness is an adverse party or representative of an adverse party.

None of movant's expert witnesses who were called by respondent were shown to have a strong allegiance of interest with movant or to be unwilling to testify. Respondent seems to argue the "conspiracy of silence" among the medical community renders a defense witness in a medical malpractice lawsuit inherently "reluctant or recalcitrant." We have never recognized such a sweeping application of the hostile witness rule and to do so would require us to make a faulty presumption.

We similarly think that the "special circumstances" provision of CR 43.05 is not satisfied merely because the witness is an expert in his profession. Though we have held that the strict rules pertaining to leading questions need not be meticulously applied to professional witnesses, *Brewster v. Commonwealth,* Ky., 568 S.W.2d 232 (1978), we have never condoned a wholesale aban-

donment of the rules as urged by respondent and allowed by the trial judge. The trial court's ruling was an abuse of discretion and constitutes reversible error.

 Movant next challenges the trial judge's admonition that prohibited counsel for movant from conferring with his own witness, Dr. Lyon. The admonition was given when a recess was called interrupting respondent's direct examination of Dr. Lyon. The purpose behind the separation of witness rule is to insure the integrity of the trial by denying a witness the opportunity to alter his testimony. *Commonwealth, Department of Highways v. Riley*, Ky., 414 S.W.2d 883 (1967). The rule clearly does not restrict trial counsel's freedom to confer with his own witness during trial. The trial judge's admonition was an abuse of discretion.

Movant's remaining assignments of error are based upon the jury instructions. Instruction No. II sets out the items of damages recoverable after a finding of negligence, covering compensation for funeral and burial expenses, medical and hospital expenses, pain and suffering, and destruction of decedent's estate of the power to earn money.

The jury awarded $2,035.00 for funeral and burial expenses even though it was not requested in respondent's complaint. Unless the trial judge allows the complaint to be amended under CR 15.02 or movant again neglects to object to the introduction of evidence supporting this item of damages, *Traylor Brothers v. Pound*, Ky., 338 S.W.2d 687 (1960), it is not properly recoverable.

The jury also awarded $465.85 in medical and hospital expenses. Movant argues evidence of expenses incurred before the surgery of June 12, 1973, was improperly admitted into evidence. Although there is evidence to support such an award, the trial judge on retrial should instruct the jury to consider only those expenses incurred on and after June 12, 1973.

Movant next argues that the wording of Instruction No. II made it possible for the jury to award the entire sum of $247,533.80 for either pain and suffering or for destruction of power to earn money. He also contends pain and suffering should not have been recoverable because there was no evidence to warrant giving the instruction. There was competent evidence of pain and suffering in the form of hospital staff notations made on decedent's medical records as his condition worsened, and the jury's use of a form verdict awarding $5,000 for pain and suffering shows movant was not prejudiced by the instruction's wording. The trial judge committed no error by limiting recovery for pain and suffering to the total amount asked for in the complaint since damages for pain and suffering are not capable of being reduced to an exact and certain sum. *Commonwealth, Dept. of Highways v. Prather*, Ky., 369 S.W.2d 118 (1963); *Adams Construction Company v. Bentley*, Ky., 335 S.W.2d 912 (1960).

Movant's remaining assignments of error are summarily dismissed as being without merit.

The judgment in favor of respondent is reversed and the case is remanded to the Boyd Circuit Court for a new trial consistent with this opinion.

All concur except O'HARA, J., who did not sit.