Shirley COULTER and Thomas
Coulter, Appellants,

v.

J. Kent THOMAS, M.D. and Louisville
S.C., Ltd., Appellees.

No. 1998–SC–000795–DG.

Supreme Court of Kentucky.

Dec. 21, 2000.

As Amended Dec. 29, 2000.

Eli J. George, Jr., Louisville, for Appellants.

Susan D. Phillips, William P. Swain, Phillips Parker Orberson & Moore, PCL, Douglass Farnsley, Catherine Murr Young, Sites & Harbison, Louisville, for Appellees.

STUMBO, Justice.

We granted discretionary review in this personal injury case to determine what is required to effectively revoke consent to a medical procedure in progress and whether a jury should be instructed on the claim of battery where the defendant refuses to comply with a patient's request that treatment stop.

## I. FACTS

Shirley Coulter, Appellant, consulted ophthalmologist Dr. Kent Thomas, Appellee, for a surgical procedure to remove a mass on Coulter's lower eyelid in early 1992. The outpatient surgery was to be performed at the SurgeCenter in Louisville. During the procedure, Pat Bowling, a circulating nurse, placed an automatic blood pressure cuff (ABPC) on Coulter's arm in an effort to monitor her blood pressure at intervals during the procedure. The ABPC automatically inflates and deflates in cycles scheduled by the operator, and the operator may also trigger an unscheduled cycle. The first time the ABPC inflated, Coulter testified that she felt extreme pain, began to sweat and tremble, and demanded the cuff to be removed. She claims that, almost immediately, the ABPC began to inflate for the second time, and she again cried out for someone to remove the cuff.[1] It was not until several minutes, and another inflation later, that the cuff was removed. The surgery continued without the benefit of the ABPC.

The Appellees offered testimony that complaints of discomfort associated with cuff inflations are very common, and thus did not indicate to them Coulter was being injured. Coulter claims they did not remove the cuff because she had been labeled as a "complainer." Appellees detail

the complaints made by Coulter in their brief. They claim she protested that the room was too cold, the EKG pads were cold, the anesthetic injection was uncomfortable, etc.

Coulter testified that she left the SurgeCenter in severe pain, caused by the blood pressure cuff. Dr. Ergadon Atasoy, who operated on Coulter for a surgical pronator teres release of her arm, discovered damage to her right arm (the arm to which the ABPC was applied). He found that the blood vessels in her arm were hemorrhaging, and blood had collected around her median nerve causing severe and permanent injury to the arm. Appellees point out that this hemorrhaging and collection of blood was found below her elbow. The ABPC was, of course, applied to her arm above the elbow.[2] Coulter brought a medical malpractice suit against the SurgeCenter, and Dr. Thomas, in which she requested a jury instruction on the claim of battery, arguing that any initial consent to use the cuff was expressly revoked when she demanded the ABPC to be removed. The trial court declined to give the instruction, and the jury returned a verdict for the defendants. The Court of Appeals affirmed, and the appellants sought discretionary review in this Court. We granted review to address the issue of revocation of consent and the battery claim.

## II. INFORMED CONSENT

■ Appellant claims her consent was not informed because she was not notified of the fact that none of the staff had read the instructions for operating the ABPC, and thus were not aware that the machine could cause injury. We do not address

1. The Appellees claim the ABPC only inflated a total of two times, disputing the second immediate inflation described by Coulter. However, Nurse Bowling testified that she may have triggered another cycle, (which would have been the second cycle to which Coulter refers). Bowling testified that such a procedure is normal if the nurse believes the reading is unreliable. Bowling states that she

does not remember triggering an unscheduled reading in this case, although she did say that she may have done so.

2. We make no finding on this issue, as causation and damages are not issues before us, and will be resolved in the trial court.

this issue because we find Ms. Coulter's consent could have been revoked, whether it was informed or not.

## III. REVOCATION OF CONSENT

■ Appellant argues that the trial court should have given an instruction to the jury on the claim of battery. However, "lack of consent is an essential element of battery." *Vitale v. Henchey*, Ky., 24 S.W.3d 651 (2000). Since we have disposed of Appellant's lack of informed consent claim, Appellant must prove that her consent was effectively revoked. An indirect look at this issue is found in *DeGrella, by and through Parent v. Elston*, Ky. 858 S.W.2d 698, 703 (1993), wherein this Court considered the right of a competent person to forego medical treatment, either by refusal or withdrawal of same. We acknowledged the common law right, but focused on the legislative codification found in KRS 311.621(8), (formerly KRS 311.622(1). There, we were primarily concerned with what proof of the patient's desires to forego medical treatment entirely under certain circumstances was required when the patient was no longer capable of voicing those desires personally.

In the case at bar, the patient is and was present to both voice the objections and give testimony about attempt to revoke. There is no case law directly on point in Kentucky regarding this issue, therefore we have looked to other jurisdictions to develop a test to guide the trial courts in determining whether sufficient proof has been presented to warrant submission of the issue to a jury.

■ In *Mims v. Boland*, Ga., 110 Ga. App. 477, 138 S.E.2d 902, 905 (1964), the plaintiff claimed she revoked her consent to a barium enema which was administered despite her revocation. In reaching its conclusions, the Court of Appeals of Georgia delineated a test which we adopt:

> To constitute an effective withdrawal of consent as a matter of law[,] after treatment or examination is in progress[,] commensurate to subject medical practitioners to liability for assault and battery if treatment or examination is continued, two distinct things are required: (1) The patient must act or use language which can be subject to no other inference and which must be unquestioned responses from a clear and rational mind. These actions and utterances of the patient must be such as to leave no room for doubt in the minds of reasonable men that in view of all the circumstances consent was actually withdrawn. (2) When medical treatments or examinations occurring with the patient's consent are proceeding in a manner requiring bodily contact by the physician with the patient and consent to the contact is revoked, it must be medically feasible for the doctor to desist in the treatment or examination at that point without the cessation being detrimental to the patient's health or life from a medical viewpoint.

*Id.* at 907. We believe that the jury could find from these factors that Coulter revoked her consent regarding use of the blood pressure cuff. First, she testified that she used very specific language in demanding that the cuff be removed. She claims that she stated, "Take it off. I can't stand it," after the first inflation. Dr. Thomas testified that she merely complained of the tightness of the cuff. Regardless, it is up to the jury to decide whom to believe. If they choose to believe Appellant, language such as "take it off" could satisfy the first prong of the test. To distinguish *Mims*, the plaintiff there merely expressed a desire to insert the barium tube herself. *Id.* at 908. There was no testimony presented in that case that the plaintiff ever clearly and unequivocally asked the person administering the enema to remove it from her body; there were merely complaints of discomfort. As such, we find that the Appellant could satisfy the first element of this test.

There is no question the plaintiff could easily prove the second prong, as the cuff was actually removed during the surgery

without any sort of complication. Therefore, we hold that, on remand, the jury should be allowed to determine if Appellant's consent was effectively revoked.

## IV. BATTERY

▉ The trial court also erred in not allowing the tendered battery instruction to the jury. In *Vitale v. Henchey*, Ky., 24 S.W.3d 651 (2000) we were faced with the question of whether the plaintiff was required to prove a physician breached the standard of care, a negligence burden, by substituting surgeons without a patient's consent. In reaching that such a burden was not required, we drew an important distinction:

> [A]s a result of Holton and the Kentucky Informed Consent Statute an action for a physician's failure to disclose a *risk or hazard of a proposed treatment or procedure* is now undisputedly one of negligence and brings into question professional standards of care. However, the physicians, as did the trial court, confused the issue of *informed* consent, i.e., the failure to disclose a risk or hazard of the surgeries, with the issue of *no* consent, or whether *any valid* consent was obtained prior to [the doctor's] performance of the surgeries. Holton and the Kentucky Informed Consent Statute do not apply when surgery is performed without the patient's consent
> . . . .

*Id.* Here, since we have disposed of the claim of informed consent, we have likewise disposed of the idea that Appellant is required to bring her claim under a theory of negligence. As stated above, this is a case about revocation of consent, and therefore, pursuant to our recent decision in *Vitale,* it is proper for Appellant to bring a claim for battery. *Vitale v. Henchey,* Ky., 24 S.W.3d 651 (2000) (declaring "Kentucky recognizes an action for battery when a physician performs an operation without the consent of the patient.") We find that the jury should have been instructed on the intentional tort of battery.

The judgment of the Court of Appeals is reversed, and we remand this case for trial on the battery claim consistent with this opinion.

LAMBERT, C.J.; COOPER, GRAVES, and KELLER, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion, with JOHNSTONE, J., joining that dissent.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the jury was properly instructed only on negligence as distinguished from battery. The jury verdict was proper.

The testimony of nurse Bowling was that Shirley Coulter complained during the first inflation that the automatic blood pressure cuff was "tight." Dr. Thomas also testified that the complaint was that the cuff was "tight" or "very tight." On the contrary, Mrs. Coulter testified that after the first inflation, she stated, "Take it off. I can't stand it." Nurse Bowling advised Mrs. Coulter that the blood pressure cuff needed to remain on her arm and that the procedure would soon be completed. The nurse further testified that she did not remove the cuff because complaints of discomfort associated with cuff inflations are not unusual and she had no indication that the patient was being injured by the cuff. Dr. Thomas also testified that such complaints were very common and that it was not severe. When the automatic cuff took a second reading during surgery the patient again complained of tightness and said, "Take it off. I can't stand it." Both Dr. Thomas and nurse Bowling testified that it was at this time that they removed the blood pressure cuff pursuant to the direction of the doctor. It should be recognized that the patient was 53 years of age at the time of the surgery in 1992, that she was 5 feet 3 inches tall, weighed over 250 pounds and was then totally disabled by rheumatoid arthritis. The evidence in-

dicates that the patient suffered from a number of problems with her right hand and arm. In addition, there was defense testimony that the median nerve below her elbow had not been injured even indirectly by the blood pressure cuff. The cuff had been applied to the upper arm. The patient had consented to the 15 minute procedure which involved the removal of a mass from her eyelid.

During trial, counsel questioned all the medical personnel present in the operating room during the procedure about the statements that were made at that time. Counsel sought to support the claim that the patient revoked consent to use the automatic blood pressure cuff, however, the jury found against the patient on the revocation of consent argument, evidently based on the testimony of the doctor and nurse. The instructions given by the trial judge correctly related to negligence and not to battery.

Certainly any party to civil litigation is entitled to have their theory of the case submitted to the jury for its acceptance or rejection if there is any evidence to sustain it. *Farrington Motors v. Fidelity & Casualty Co.*, Ky., 303 S.W.2d 319 (1957). The circuit judge did not abuse his discretion in any way in regard to the instructions given.

I conclude that neither the complaints as the patient described them, nor as were described by the medical personnel, constitutes a sufficient expression of revocation. I would affirm the decision of the jury and the Court of Appeals.

JOHNSTONE, J., joins in this dissent.