Pamela ANDREW, Appellant,

v.

Leo BEGLEY, Individually; Cardiopulmonary Laboratories, Inc.; and Rita Ratliff, M.D., Individually, Appellees.

No. 2005–CA–000273–MR.

Court of Appeals of Kentucky.

June 23, 2006.

Rehearing Denied Aug. 31, 2006.

M. Gail Wilson, Bertram & Wilson, Jamestown, KY, for appellant.

John G. Prather, Jr., Winter R. Huff, Law Offices of John G. Prather, Somerset, KY, for appellee Rita Ratliff, M.D.

Mary K. Molloy, Robert L. Raper, Arnzen, Wentz, Molloy, Laber & Storm, P.S.C., Covington, KY, for appellees, Leo Begley and Cardiopulmonary Laboratories, Inc.

Before McANULTY, SCHRODER, and VANMETER, Judges.

## OPINION

McANULTY, Judge.

Pamela Andrew filed this claim after submitting to a physical examination for Social Security performed by Rita Ratliff, M.D., who worked as a contract physician with Cardiopulmonary Laboratories, Inc. Leo Begley, who is not a physician, owns Cardiopulmonary Laboratories and assisted Dr. Ratliff with portions of Pamela's examination. In her complaint, Pamela alleged the following tortious conduct on the part of Dr. Ratliff, Leo Begley and Cardiopulmonary Laboratories: medical malpractice; negligence; assault and battery; and outrageous conduct. In addition, as to Cardiopulmonary Laboratories, Pamela claimed that it was negligent in failing to employ personnel trained and experienced in the performance of examinations. The trial court granted summary judgment in favor of the defendants on all claims because it concluded that Pamela needed, yet did not obtain, an expert witness to support the medical malpractice claim and her other claims were untenable. Because we conclude that expert testimony was required under the circumstances, we affirm.

According to Pamela, she reported to Cardiopulmonary Laboratories for a com-

prehensive medical examination on December 13, 1997. The Social Security Administration, through the Department of Disability Determination of Kentucky, scheduled the exam as part of the regularly-scheduled review of her disability. At the time of the examination, Pamela was already totally disabled. She had pre-existing injuries to her neck, back, shoulder, arm, hip and leg.

While at the examination, Pamela alleges that Leo Begley summoned her to the examination room, but would not permit her mother-in-law to go into the room with her, threatening her with cancellation of her Social Security benefits if she did not go into the examination alone. Once she was in the room, he told her to disrobe, but did not provide her with a gown. After she requested one, he gave her a short, paper gown that only came to above her knees and did not adequately cover her during a range of motion examination. He left the room while she undressed.

While in the examination room, Pamela alleged that she could hear Dr. Ratliff outside in the hall laughing with someone else about Pamela's diagnosed Bertolotti's syndrome, which is a back condition. Dr. Ratliff then entered the room and proceeded to obtain a history and perform the evaluation.

During the evaluation, Dr. Ratliff performed a sensory examination and a range of motion examination. To conduct the sensory examination, Pamela contends that Dr. Ratliff used something larger than a toothpick and punctured her skin nine times. While performing the range of motion examination, Pamela alleges that Dr. Ratliff asked her to raise her hands above her head. Pamela put them both up as far as she could, but Dr. Ratliff took her right arm and yanked it further upward. Pamela believes that this yank tore her rotator cuff.

After the range of motion examination on the upper extremities, Dr. Ratliff then evaluated Pamela's lower extremities. During this segment, Pamela alleges that Dr. Ratliff tried to force her right knee up to her chest.

At that point during the examination, Dr. Ratliff asked Leo Begley to assist her because Dr. Ratliff believed that Pamela was being uncooperative, and Dr. Ratliff was experiencing back problems herself. According to Pamela, Leo Begley also tried to force her leg to her chest, causing bruises. In addition, Pamela testified in her deposition that she was very uncomfortable during this exam because her gown did not cover her genital organs. When she asked for something with which to cover up, she contends that Leo Begley said, "Oh, get your hands away from there, I'm not looking at that anyway."

Finally, Pamela attempted to do a squatting test with little success, and Leo Begley stepped in and grabbed her wrists and pushed her forearms, forcing her to squat down further. Each time that either Dr. Ratliff or Leo Begley forced her body to do these things, Pamela contends she cried out in pain. Further, she claims in her brief that she asked Leo Begley to quit.

Pamela alleges that she experienced the following pain and discomfort following the exam: bruised legs; prolonged swelling in her lower back; increased pain level in her lower back and right hip, which pain radiated down the right leg; both legs falling asleep if she sat for a period of time; shoulder pain; and emotional distress. The pain and discomfort prevented her from having sexual relations with her husband (from whom she is now divorced) and playing with her children.

After the parties had taken depositions and completed additional discovery, the defendants filed motions to dismiss under

CR 41.02 for failure to prosecute. Although the motions were couched in terms of failure to prosecute, they argued that Pamela had not identified an expert witness despite interrogatory requests for that information. The defendants argued that the performance of the medical evaluation for Social Security purposes involved the exercise of medical judgment on the part of those performing the exam not only in what they examined, but also in how to perform the exam in a proper and reasonable manner. Consequently, the defendants contended that expert testimony by which that judgment may be evaluated was necessary under the circumstances.

The trial court evaluated the motions both as motions to dismiss and as motions for summary judgment in favor of the defendants. The trial court determined that Pamela's claim was based on medical negligence, not assault and battery. In making this determination, the trial court relied on Pamela's answers to Dr. Ratliff's interrogatories in which she stated that her claim against Dr. Ratliff was based upon her failure to exercise the degree of care and skill that is ordinarily exercised by a competent physician.

As to the claims of ordinary negligence, assault and battery, and outrageous conduct, the trial court concluded that the undisputed facts in the case were that Pamela's only tenable complaint was medical negligence and nothing else. The trial court dismissed all of Pamela's claims against all defendants with prejudice, precipitating this appeal.

On appeal, Pamela argues that expert testimony is not required in all instances of medical negligence and is not required to show assault, outrageous conduct and ordinary negligence. Pamela contends that this case involves a consultative examination and the actions of non-medical personnel. Pamela believes that a jury should determine: (1) whether Dr. Ratliff and Leo Begley were negligent in conducting Pamela's evaluation; (2) whether Dr. Ratliff was negligent in allowing Leo Begley, a person who is not a physician or licensed in that area, to assist in a passive range of motion examination; and (3) whether Dr. Ratliff and Leo Begley committed the torts of assault and outrageous conduct. She does not contend, however, that genuine issues of material fact precluded summary judgment on her claims of medical malpractice.

Although the trial court considered Pamela's slow pace in moving this case along, it dismissed her claims by summary judgment and not for her failure to prosecute. The standard of review of a trial court's granting of summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial warranting a judgment in its favor. *See James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Insurance Co.*, 814 S.W.2d 273, 276 (Ky.1991).

Once a party files a properly supported summary judgment motion, the nonmoving party cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial. *See Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 482 (Ky.1991). In considering a motion for summary judgment, the court must view all the facts and inferences drawn therefrom in the light most favorable to the party opposing the motion, and all doubts are to be resolved in his or her favor. *See id.* at 480.

We begin with Pamela's claim of ordinary negligence. The defendants argue that Pamela's complaint of ordinary negligence is nothing more than a restatement of the malpractice claim, which was properly dismissed because Pamela had not identified an expert to establish the standard of skill expected of a reasonably competent medical practitioner and that the alleged negligence proximately caused the injury.

Pamela encountered Dr. Ratliff, Cardiopulmonary Laboratories and Leo Begley in the course of a consultative medical examination. There is no genuine issue that Leo Begley assisted Dr. Ratliff when requested by her to do so and acted at her direction and with her supervision the entire time. Thus, the duties owed to Pamela by these medical professionals stem from the relationship of a physician and patient.

As a physician performing the sensory and range of motion exams at issue in this case, Dr. Ratliff had a duty to "use that degree of care and skill which is expected of a reasonably competent practitioner in the same class to which [the physician] belongs, acting in the same or similar circumstances." *Blair v. Eblen,* 461 S.W.2d 370, 373 (Ky.1970).

■ The presumption of negligence "is never indulged in from the mere evidence of mental pain and suffering of the patient, or from failure to cure, or poor or bad results,.... The burden of proof is upon the patient to prove the negligence of the physician or surgeon, and that such negligence was the proximate cause of his injury and damages." *Meador v. Arnold,* 264 Ky. 378, 94 S.W.2d 626, 631 (Ky.1936). In proving negligence, an injured person may present lay testimony to establish his or her appearance after treatment or testify regarding existing pain or its severity. *See id.*

■ Except in limited factual circumstances, however, the plaintiff in a medical negligence case is required to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury. *See id.; Johnson v. Vaughn,* 370 S.W.2d 591, 596–97 (Ky.1963); and *Reams v. Stutler,* 642 S.W.2d 586, 588 (Ky.1982).

■ The opinion of the expert must be based "on reasonable medical probability and not speculation or possibility." *Sakler v. Anesthesiology Associates, P.S.C.,* 50 S.W.3d 210, 213 (Ky.App.2001). To survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper. *See Turner v. Reynolds,* 559 S.W.2d 740, 741–42 (Ky. App.1977).

■ Kentucky consistently recognizes two exceptions to the expert witness rule in medical malpractices cases. *See Perkins v. Hausladen,* 828 S.W.2d 652, 655 (Ky.1992). Both exceptions involve the application of the *res ipsa loquitur* doctrine and permit the inference of negligence even in the absence of expert testimony. *See id.* at 654. One exception involves a situation in which " 'any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care'; illustrated by cases where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy. The second occurs when 'medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters.' " *Id.* at 655 (quoting Prosser and Keeton on Torts, Sec. 39 (5th ed.1984)). An example of the second

exception would be the case in which the defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently. *See id.*

■ We do not believe either exception is involved here. There are no facts or circumstances from which negligence and causation can be inferred. *See Perkins,* 828 S.W.2d at 654. Neither Dr. Ratliff nor Leo Begley made admissions of a technical character from which one could infer negligence on the part of the defendants. Further, we do not believe that the average layperson possesses the knowledge or experience to know if puncture wounds are possible during a skin prick test in the absence of negligence. Nor do we believe that the average layperson knows of the appropriate manner in which to conduct a passive range of motion exam on a person with Pamela's spinal condition and other pre-existing injuries. Pamela was required to present expert testimony on the issue of medical malpractice. Because she did not, summary judgment in favor of the defendants was proper.

Pamela believes that her claims of ordinary negligence should go to the jury even if her medical malpractice claims fail. She contends that at the very least, a physician hired by a third party to examine a patient owes the patient a duty to properly perform the examination so as not to injure the patient during the examination. Considering the nature of her alleged injuries, the type of examination at issue and our discussion above, however, we believe that this contention is a re-argument of the applicability of the *res ipsa loquitur* doctrine, which we have decided is not available in this case. *See generally Twitchell v. MacKay,* 434 N.Y.S.2d 516, 78 A.D.2d 125, 127–128 (N.Y.A.D.1980) (setting out test for determining whether action for personal injuries may be maintained on

dual theories of medical malpractice or simple negligence, that test being "whether the case involves a matter of science or art requiring special knowledge or skill not ordinarily possessed by the average person or is one where the common everyday experiences of the trier of the facts is sufficient in order to reach the proper conclusion. In the former, expert opinion testimony is ordinarily required to aid the trier of the facts; in the latter it is unnecessary.")

■ We move to the torts of assault and outrageous conduct. Pamela contends that the assault element of her complaint does not require a medical expert. Although she presents her argument in terms of assault, it seems that she intends to argue that the defendants actually committed a battery as she states that they forcibly moved her arms beyond what they could move and that Dr. Ratliff punctured her skin. "Assault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch,* 39 S.W.3d 474, 480 (Ky. App.2001). Battery is any unlawful touching of the person of another, either by the aggressor, or by any substance set in motion by him or her. *See Vitale v. Henchey,* 24 S.W.3d 651, 657 (Ky.2000) (quoting *Sigler v. Ralph,* 417 S.W.2d 239, 241 (Ky. 1967)).

■ In Kentucky, under certain factual circumstances, the claim of battery may arise in addition to a claim for medical malpractice. *See id.* at 656. An action for battery "is different from a negligence action for medical malpractice because the claim depends on neither professional judgment nor the physician's surgical skill." *Id.* at 656. Like the trial court, we believe that Pamela's claim for battery is really a claim for medical malpractice be-

cause it depends on Dr. Ratliff's professional judgment.

Notwithstanding our conclusion that this battery claim falls under the label of medical malpractice, Pamela's battery claim was properly dismissed for another reason—evidence of lack of consent. *See id.* at 658. In establishing a battery claim, a plaintiff must prove the absence of consent. *See id.* Moreover, where as in these circumstances, a physician is conducting an examination with express or implied consent, a plaintiff must prove that she withdrew her consent. *See Coulter v. Thomas,* 33 S.W.3d 522, 524 (Ky.2000) citing with approval *Mims v. Boland,* 110 Ga.App. 477, 138 S.E.2d 902 (Ga.App.1964).

In *Coulter,* the Kentucky Supreme Court adopted the two-prong test delineated in *Mims* for the effective withdrawal of consent as a matter of law. That test is as follows:

> To constitute an effective withdrawal of consent as a matter of law after treatment or examination is in progress commensurate to subject medical practitioners to liability for assault and battery if treatment or examination is continued, two distinct things are required: (1) The patient must act or use language which can be subject to no other inference and which must be unquestioned responses from a clear and rational mind. These actions and utterances of the patient must be such as to leave no room for doubt in the minds of reasonable men that in view of all the circumstances consent was actually withdrawn. (2) When medical treatments or examinations occurring with the patient's consent are proceeding in a manner requiring bodily contact by the physician with the patient and consent to the contact is revoked, it must be medically feasible for the doctor to desist in the treatment or examination at that point without the cessation being detrimental to the patient's health or life from a medical viewpoint.

*Mims,* 138 S.E.2d at 907.

In her deposition, when asked questions regarding the passive range of motion test in which Dr. Ratliff and then Leo Begley allegedly forced her knee to her chest, Pamela responded as follows:

Q. Did you tell them not to do it?

A. I told them that it hurt.

Q. Did you tell them not to do it?

A. I was afraid to tell them not to do it.

. . .

Q. Why were you afraid? You said you were afraid of these two people.

A. Because right from the beginning, he threatened me with the loss of my Social Security.

Q. Mr. Begley threatened you with the loss of your Social Security?

A. Yes, he did.

Q. Did Dr. Ratliff ever threaten you with anything?

A. No, she didn't.

In addition to this testimony, throughout the deposition, Pamela said that she cried out in pain in response to several aspects of the examination or told them that she was hurting. Contrary to her assertion in her brief, Pamela did not testify that she told either Dr. Ratliff or Leo Begley to stop or quit at any point in the examination. Protestations by a plaintiff of pain and discomfort and disagreement with the defendants in the manner in which they conduct an examination are not enough to meet the first prong of the test for effective withdrawal. *See Mims,* 138 S.E.2d at 908. Pamela did not prove the absence of her consent in this case. Thus, her battery claim must fail as a matter of law.

Finally, we address Pamela's claim of outrageous conduct. The elements of this claim are as follows:

1. The wrongdoer's conduct must be intentional or reckless;

2. The conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;

3. There must be a causal connection between the wrongdoer's conduct and the emotional distress; and

4. The emotional distress must be severe.

*Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky.1996) citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky.1984). In any case, it is for the court to decide whether the conduct complained of can reasonably be regarded as so extreme and outrageous as to permit recovery, bearing in mind that people are expected to withstand bad manners, petty insults, unkind words and minor indignities. *See Whittington v. Whittington*, 766 S.W.2d 73, 74 (Ky.App.1989) (citing comment h to Restatement (Second) of Torts § 46); *Kroger*, 920 S.W.2d 61, 65. In this case, we agree with the trial court that the conduct complained of in this case cannot reasonably be regarded as so extreme and outrageous as to permit recovery.

In summary, upon reviewing the facts, we are convinced that the examination at issue was an extremely unpleasant experience for Pamela, both mentally and physically. Based on the evidence and as a matter of law, however, any tenable claim that she had was in medical malpractice. The claim required expert testimony to establish the standard of skill expected of a reasonably competent medical practitioner and that the alleged negligence proximately caused the injury. Because Pamela produced no expert testimony, summary judgment was proper in this case. We affirm the summary judgment of the Bell Circuit Court.

ALL CONCUR.