RENDERED:  AUGUST 14, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000114-MR

RANDY LEWIS                                                        APPELLANT

APPEAL FROM BOURBON CIRCUIT COURT
v.          HONORABLE JEREMY MATTOX, JUDGE
ACTION NO. 16-CI-00247

DR. VELUPILLAI WIGNAKUMAR                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, COMBS, AND MAZE, JUDGES.

ACREE, JUDGE:  Appellant, Randy Lewis, appeals the Bourbon Circuit Court's

order granting summary judgment for Appellee, Dr. Velupillai Wignakumar ("Dr.

Kumar").  After careful review, we affirm.

# BACKGROUND

According to his allegations, on December 13, 2015, Lewis visited Bourbon Community Hospital to address severe pain he was experiencing in his stomach/abdomen. He was examined by Dr. Dale, the hospital's treating physician, who ordered a CT scan. Upon a review of the CT scan, Dr. Dale diagnosed Lewis with appendicitis and scheduled surgery.

The following day, Dr. Kumar performed a laparoscopic appendectomy. According to Lewis, Dr. Kumar explained that his appendix burst during surgery and he cleaned up all the tissue he could. However, a biopsy of the tissue revealed that it was not appendix tissue. At his follow-up visit, on January 16, 2016, Lewis continued to complain about pain in his stomach/abdomen. Dr. Kumar prescribed him Lortab and antibiotics.

Still experiencing severe pain, Lewis visited his primary care physician, Dr. Larry Ertel, who ordered blood work. The results showed no signs of infection, and he was referred to Dr. Rebecca Bartee. Because of the appendectomy, Dr. Bartee ordered a CT scan. However, the scan did not clearly show the part of Lewis's body where surgery was performed. Dr. Bartee then ordered an ultrasound of Lewis's gallbladder.

On February 27, 2016, Lewis visited the emergency room seeking relief from continued pain in his stomach/abdomen. A third CT scan was ordered.

This scan showed Lewis's appendix still intact. The following day, Dr. Daniel Kennedy, a general surgeon from the University of Kentucky, successfully removed Lewis's appendix. According to Lewis's allegations, Dr. Kennedy said his appendix was never disturbed by Dr. Kumar, and that "it is common medical procedure" to perform an open appendectomy, "if you cannot find the appendix by using laparoscopic procedures."

On December 7, 2016, Lewis filed a *pro se* complaint against Dr. Kumar. The circuit court construed Lewis's complaint as alleging: (1) a failure by Dr. Kumar to provide the proper standard of care during surgery; and (2) a failure to inform him, during his follow-up visit, of the failure to remove his appendix. Additionally, Lewis stated the facts "clearly represented themselves and a medical expert was not necessary to prove his case."

After filing his *pro se* complaint, Lewis obtained counsel who moved for leave to amend the complaint. The circuit court granted the motion. However, no amended complaint was filed.

Dr. Kumar served Lewis his first set of interrogatories and requests for production of documents on December 30, 2016, but nearly a year elapsed before Lewis served complete responses. In the interim, Dr. Kumar had agreed to an extension of time to respond, but Lewis did not adhere to the new deadline. Dr.

Kumar then moved to dismiss the action. *See* CR[1] 37.04(1); CR 37.02(2)(c). Because Lewis tendered responses just before the hearing, the circuit court denied the motion to dismiss but subsequently entered other appropriate orders. *Id.* Among them was an order requiring Lewis to pay $250 toward Dr. Kumar's attorney fees for the effort of compelling discovery. The court also ordered Lewis to amend his discovery responses within thirty (30) days after determining they were incomplete or non-responsive. Most significantly, when the issue arose whether Lewis needed a medical expert to establish the standard of care, the circuit court held that Lewis "has not yet precluded himself from the disclosure of expert witnesses. CR 26.02." (Record (R.) at 103.) The circuit court allowed Lewis until October 8, 2018, to identify his expert witnesses. He never identified an expert.

Dr. Kumar moved for summary judgment. He noted that the only evidence in the record was Lewis's response to discovery. He argued that the evidence of record failed to establish, or to create a genuine issue that Lewis could establish, a standard of care because he identified no medical expert to testify to that standard.

The circuit court concluded that the doctrine of *res ipsa loquitur* did not apply, nor did Dr. Kumar "make[] admissions of a technical character from which one could infer that he or she acted negligently." (Summary Judgment

---

[1] Kentucky Rules of Civil Procedure.

(quoting *Andrew v. Begley*, 203 S.W.3d 165, 171 (Ky. App. 2006).) The court

then ruled as follows:

> The Court has set out herein that the technical, medical
> aspects, and objective standard of care, require expert
> testimony. To date, [Lewis] has had nearly two years to
> disclose experts for this case and has not done so. In
> August, this Court denied [Dr. Kumar's] Motion for
> Summary Judgment and afforded [Lewis] an **additional
> 60 days** to disclose experts. With that being said, the
> Court can no longer allow this case to continue.

The court then granted summary judgment. This appeal followed.

## STANDARD OF REVIEW

First, the circuit court has the discretion to decide whether expert

testimony is necessary. *Green v. Owensboro Medical Health System, Inc.*, 231

S.W.3d 781, 783 (Ky. App. 2007). We will not disturb the exercise of that

discretion unless abused. *Id.*

Second, "[t]he proper standard of review on appeal when a trial judge

has granted a motion for summary judgment is whether the record, when examined

in its entirety, shows there is 'no genuine issue as to any material fact and the

moving party is entitled to a judgment as a matter of law.'" *Hammons v.

Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (quoting CR 56.03). "Because

summary judgment does not require findings of fact but only an examination of the

record to determine whether material issues of fact exist, we generally review the

grant of summary judgment without deference to either the trial court's assessment

of the record or its legal conclusions." *Id.* (citing *Malone v. Ky Farm Bur. Mut. Ins. Co.*, 287 S.W.3d 656, 658 (Ky. 2009)).

## ANALYSIS

Under Kentucky law, "[m]edical malpractice cases . . . usually require expert medical testimony to establish three things:  'the applicable standard of care, any breach that occurred and any resulting injury to the plaintiff.'  *Blankenship v. Collier*, 302 S.W.3d 665, 667 (Ky. 2010)."  *Chamis v. Ashland Hosp. Corp.*, 532 S.W.3d 652, 656 (Ky. App. 2017).  However, in some medical malpractice scenarios, expert testimony is not needed because the *res ipsa loquitor* doctrine allows negligence to be inferred from medical evidence in the record showing the risk of injury was extraordinary, its occurrence was within the defendant's exclusive control, and the plaintiff did not contribute to his own injury.  *Andrew*, 203 S.W.3d at 170; *Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992).

Lewis's problem is that he failed to compile a record of medical evidence from which Dr. Kumar's negligence could be inferred.  As the circuit court said:  "The only documents obtained by this Court are Plaintiff's Responses to Interrogatories and Requests for Production of Documents.  No depositions, affidavit [sic], or medical records are in the Record to argue Defendant admitted to negligence." (R. at 133.)  "After reviewing the Record," the circuit court found "that any layman would not be competent to pass judgment based on common

-6-

experience that [Dr. Kumar] did or did not act within the proper standard of care. Surgical procedures are technical in nature, and no lay witness can testify whether [Dr. Kumar] acted in accordance with a reasonable medical professional in the same circumstance." (R. at 132.) The circuit court concluded that the case could not go forward without expert medical testimony.[2]

Requiring expert testimony is wholly within the trial court's discretion. *Green*, 231 S.W.3d at 783. Consequently, this Court will reverse only upon finding the trial court abused its discretion. *Id.* Given this record, we can find no abuse of discretion. Without evidence of the standard of care, a breach, or causation – each an element of his medical negligence cause of action – Lewis did not create a genuine issue as to several material facts necessary to prove his case. That entitled Dr. Kumar to summary judgment.

"[A] party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 482 (Ky. 1991). "[W]here a sufficient amount of time

---

[2] Lewis did submit his own short affidavit after the hearing on Dr. Kumar's first summary judgment motion, but before it was denied. The affidavit included his statements: (1) that Dr. Kumar performed a "failed appendectomy" but failed to inform him that it "was botched"; (2) attributing the pain he experienced over the following two months to Dr. Kumar's "failed appendectomy"; and (3) that his appendix was removed two months later after Dr. Kumar performed his operation. This Court considered this affidavit in analyzing whether it was an abuse of the circuit court's discretion to require expert testimony to establish that Dr. Kumar, in fact, performed a "failed appendectomy" on Lewis.

has expired and the plaintiff has still 'failed to introduce evidence sufficient to establish the respective applicable standard of care,' then the defendants are entitled to summary judgment as a matter of law." *Blankenship*, 302 S.W.3d at 668 (quoting *Green*, 231 S.W.3d at 784).

Here, the circuit court made clear Lewis's need to identify a medical expert who would testify to the elements of his claim. When, after nearly two years, Lewis failed to do so, the case was ripe for summary judgment.

Although Lewis points to the allegations in his complaint that Dr. Kumar "botched" the operation, that is not enough. "[P]leadings are not evidence[.]" *Educ. Training Sys., Inc. v. Monroe Guar. Ins. Co.*, 129 S.W.3d 850, 853 (Ky. App. 2003). We cannot ascribe to Lewis's allegations – which expressed his opinion as to the ultimate fact of liability – the evidentiary value necessary to create a genuine issue of material fact as to each element of his negligence claim.

Also, we are not persuaded by Lewis's citation to *Sargent v. Shaffer*, 467 S.W.3d 198 (Ky. 2015) and *Argotte v. Harrington*, 521 S.W.3d 550 (Ky. 2017). These cases are inapposite because both are informed consent cases. In both, the Kentucky Supreme Court analyzed Kentucky's informed consent statute, KRS[3] 304.40-320, and held that expert testimony is not required to prove whether a "physician's notice to the patient would provide a reasonable individual with a

---

[3] Kentucky Revised Statutes.

general understanding of the procedure and . . . [the] substantial risks and hazards inherent in the proposed treatment." *Argotte*, 521 S.W.3d at 556 (internal quotation marks and citation omitted). That question, said the Court, is "perfectly suited for application by jurors of ordinary competence, education, and intellect without the need for expert testimony." *Id.* (internal quotation marks and citation omitted). But this case is not about informed consent.

We also reject Lewis's argument that his injuries result from Dr. Kumar's "ordinary negligence" and, therefore, expert testimony is not required. We disagree. Lewis's cause of action is clearly one for medical negligence and cannot be couched otherwise to defeat the requirement of expert proof.

## **CONCLUSION**

For the foregoing reasons, we affirm the Bourbon Circuit Court's order granting summary judgment for Dr. Kumar.

ALL CONCUR.

BRIEF FOR APPELLANT:

James Paul Brannon
Paris, Kentucky

BRIEF FOR APPELLEE:

Benny C. Epling, II
William Robert Long, Jr.
Lexington, Kentucky