RENDERED: NOVEMBER 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1224-MR

MARK A. WOODS                                        APPELLANT

v.              APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE BRIAN C. EDWARDS, JUDGE
ACTION NO. 18-CI-002199

COMMUNITY MEDICAL
ASSOCIATES, INC. D/B/A NORTON
SURGICAL ASSOCIATES AND
ALEXANDRA C. MAKI, M.D.                           APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND JONES, JUDGES.

CALDWELL, JUDGE: Mark Woods appeals from orders of the Jefferson Circuit

Court granting summary judgment in favor of Community Medical Associates,

Inc. d/b/a Norton Surgical Associates ("Norton"), and Alexandra Maki, M.D. in this medical negligence case.[1] Upon careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Woods was scheduled to undergo a laparoscopic appendectomy on April 18, 2017, performed by Dr. Maki. Upon inserting the surgical instrument into Woods' abdomen, Dr. Maki noticed an unusual amount of blood. She removed the instrument, made an incision, and identified the source of the bleeding. It is undisputed that there was injury to Woods' iliac artery and gonad vessel during the procedure. A vascular surgeon was brought in to assist Dr. Maki in repair of the vessels. After repair of the vessels, Dr. Maki completed the appendectomy. Woods filed a complaint in the Jefferson Circuit Court, alleging that, due to Dr. Maki's negligence in injuring his gonad vessel, he has experienced erectile dysfunction since the date of the procedure.[2]

This case remained on the circuit court's docket for over three years. During that time, Woods propounded discovery upon Norton and Dr. Maki, but did not take any depositions. The circuit court imposed a deadline for the parties to

---

[1] The Jefferson Circuit Court entered an order granting summary judgment to Norton and Dr. Maki on May 4, 2021. The circuit court subsequently entered an order denying Woods' motion to alter, amend, or vacate that order on September 17, 2021.

[2] Woods' wife also filed a loss of consortium claim. However, it was dismissed upon motion of Norton and Dr. Maki because she was not married to Woods at the time he underwent the appendectomy. She did not appeal and is not a party to this appeal.

identify expert witnesses prior to trial. Woods failed to meet the deadline. Shortly thereafter, Norton and Dr. Maki filed a motion for summary judgment, claiming Woods could not prove his claims without expert testimony. After briefing, the circuit court granted the motion for summary judgment. This appeal followed.

On appeal, Woods argues the operative reports of Dr. Maki and the vascular surgeon, combined with discovery responses – which he characterizes as judicial admissions – demonstrate medical negligence. He also claims the judicial admissions demonstrate a lack of informed consent. Woods argues he does not need an expert witness because *res ipsa loquitur* applies and the circuit court erred in granting summary judgment to the appellees. We disagree.

## STANDARD OF REVIEW

When a circuit court grants a motion for summary judgment, the standard of review for the appellate court is *de novo* because only legal issues are involved. *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004). We must consider the evidence of record in the light most favorable to the non-movant (*i.e.*, Woods) and determine whether the circuit court correctly found there was no genuine issue as to any material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 780 (Ky. App. 1996).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure (CR) 56.03. The movants bear the initial burden of demonstrating that there is no genuine issue of material fact in dispute. The party opposing the motion then has the burden to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991). A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings. *Continental Casualty Co. v. Belknap Hardware & Manufacturing Co.*, 281 S.W.2d 914 (Ky. 1955).

## ANALYSIS

Except in very limited circumstances, the plaintiff in a medical negligence case

> is required to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury. *See* [*Meador v. Arnold*, 94 S.W.2d 626, 631 (Ky. 1936)]*; Johnson v. Vaughn*, 370 S.W.2d 591, 596-97 (Ky. 1963); and *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982).
>
> The opinion of the expert must be based "on reasonable medical probability and not speculation or

possibility." *Sakler v. Anesthesiology Associates, P.S.C.*, 50 S.W.3d 210, 213 (Ky. App. 2001). To survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper. *See Turner v. Reynolds*, 559 S.W.2d 740, 741-42 (Ky. App. 1977).

Kentucky consistently recognizes two exceptions to the expert witness rule in medical malpractices cases. *See Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992). Both exceptions involve the application of the *res ipsa loquitur* doctrine and permit the inference of negligence even in the absence of expert testimony. *See id.* at 654. One exception involves a situation in which "'any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care'; illustrated by cases where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy. The second occurs when 'medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters.'" *Id.* at 655 (quoting Prosser and Keeton on Torts, Sec. 39 (5th ed. 1984)). An example of the second exception would be the case in which the defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently. *See id.*

*Andrew v. Begley*, 203 S.W.3d 165, 170-71 (Ky. App. 2006).

Woods argues the facts of this case do not require expert testimony.

For example, Woods points to photographic exhibits and operative reports

submitted to the circuit court and contends they indicate "that [Dr. Maki] placed

the trocar in the lower abdomen *directly above the iliac artery*. Intent to remove

the appendix on the *other* side of the stomach, the *right* side of the abdomen where

-5-

the [appendix] is located.  Obviously not a good location to insert the trocar."[3] (Emphasis in original.)  This begs the question – obvious to whom?  Woods appears to be arguing that, under this set of facts, "any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care[.]"  *Andrew*, 203 S.W.3d at 170.  We are unpersuaded.  Without expert testimony, the jury would not know if Dr. Maki's actions were standard procedure for a laparoscopic appendectomy, or whether she breached the duty of care by inserting the trocar where she did.

Woods additionally characterizes the discovery responses of Dr. Maki as judicial admissions.  A judicial admission "may be defined to be a formal act done in the course of judicial proceedings which waives or dispenses with the necessity of producing evidence by the opponent and bars the party himself from disputing it; and, as a natural consequence, allows the judge to direct the jury to accept the admission as conclusive of the disputed fact."  *Sutherland v. Davis*, 151 S.W.2d 1021, 1024 (Ky. 1941).  We again disagree.  Although Dr. Maki admitted an injury occurred to the left iliac artery and left gonad vessel in her answers to interrogatories, at no point does Dr. Maki admit she deviated from the standard of care.  We reiterate that only expert testimony could provide evidence of negligence in light of Dr. Maki's operative notes and discovery responses.  The average

---

[3] *See* page 3 of Appellant's brief.

person does not know if Dr. Maki's attempt to enter Woods' abdomen on the left side was standard procedure or negligence. Nor does the average person possess the anatomical and surgical knowledge to decipher the operative notes of Dr. Maki and the vascular surgeon who assisted her. Stated differently, there are no facts or circumstances from which negligence can be inferred without expert testimony. The case at bar is not analogous to a situation in which a surgeon left a foreign object in the body or removed the incorrect limb. *See Andrew*, 203 S.W.3d at 170. We agree with the reasoning of the appellees that, should Woods' argument prevail, any physician describing an injury in a medical record later produced during discovery would be effectively making a legal admission of liability. This would, for all practical purposes, replace negligence with strict liability.[4] Woods' argument must fail.

We are similarly unpersuaded by Woods' assertion that expert testimony is not needed regarding his claim of lack of informed consent. Woods claims he was not informed of the possibility an artery or vein could be lacerated during the procedure, nor that he could end up experiencing erectile dysfunction as

---

[4] "Strict liability is a judicial doctrine which relieves a plaintiff from proving specific acts of negligence and protects him from certain defenses." *Carmical v. Bullock*, 251 S.W.3d 324, 326 (Ky. App. 2007) (internal quotations marks omitted).

a result of the appendectomy. We first turn to Kentucky's informed consent statute, KRS[5] 304.40-320, which states, in relevant part

> [i]n any action brought for treating, examining, or operating on a claimant wherein the claimant's informed consent is an element, the claimant's informed consent shall be deemed to have been given where:
>
> (1) The action of the health care provider in obtaining the consent of the patient or another person authorized to give consent for the patient was in accordance with the accepted standard of medical or dental practice among members of the profession with similar training and experience; and
>
> (2) A reasonable individual, from the information provided by the health care provider under the circumstances, would have a general understanding of the procedure and medically or dentally acceptable alternative procedures or treatments and substantial risks and hazards inherent in the proposed treatment or procedures which are recognized among other health care providers who perform similar treatments or procedures[.]

We begin by noting we find it particularly problematic that Woods relies on caselaw that has been overruled to support the arguments he makes regarding informed consent. The cases relied on by Woods are *Sargent v. Shaffer*, 467 S.W.3d 198 (Ky. 2015); and *Argotte v. Harrington*, 521 S.W.3d 550 (Ky.

---

[5] Kentucky Revised Statute.

2017). Both *Sargent* and *Argotte* ruled that expert testimony was not always necessary to demonstrate that a risk associated with a particular procedure was or was not "substantial" as provided in KRS 304.40-320(2). However, in overruling those cases, the Kentucky Supreme Court stated,

> [i]ndeed, determining whether a particular risk is substantial is not only a matter best addressed by the medical community and therefore an element requiring expert testimony, but that is what a plain reading of KRS 304.40-320(2) requires, i.e., "substantial risks and hazards inherent in the proposed treatment or procedures which are recognized among other health care providers who perform similar treatments or procedures." To the extent that *Sargent* and *Argotte* suggest that the substantiality of a risk is a jury question that does not depend on medical evidence those holdings are overruled.

*University Medical Center, Inc. v. Shwab*, 628 S.W.3d 112, 129 (Ky. 2021).[6]

Accordingly, under *Shwab,* expert testimony is required to understand whether the injuries suffered by Woods (*i.e.*, injury to the iliac artery and gonad vessel) would qualify as "inherent" or "substantial" to a laparoscopic appendectomy, and of which he should have been informed. This requirement of *Shwab* is fatal to Woods' argument regarding informed consent.

KRS 304.40-320(1) also requires expert testimony on its face. There is simply no other way of knowing whether, in obtaining consent, a healthcare

---

[6] Notably, the plaintiff in *Sargent* did in fact have an expert testify that the defendant doctor's explanation of the risks involved did not satisfy the standard for accepted medical practice.

provider acted "in accordance with the accepted standard of medical or dental practice among members of the profession with similar training and experience[,]" other than hearing from an expert in the field. The Kentucky Supreme Court also addressed this in *Shwab*:

> KRS 304.40-320 was enacted as part of a tort-reform effort and was produced by the Governor's Hospitals and Physicians Professional Liability Insurance Advisory Committee in 1975. In the Committee's Majority Report, they describe the statute (Section 13 of their proposal and eventually Section 4 of Senate Bill 248 in the 1976 Session of the General Assembly) as follows:
>
> > **This section will legislatively require that "informed consent" cases be proven by expert testimony relating to accepted standards of practice of the profession in providing information**, and further require that an objective standard be applied in determining whether that information would likely have resulted in any different decision by the plaintiff. The purpose of this section is to eliminate the possibility of (1) a jury's speculating after the fact that the health care provider should have told the plaintiff of a given risk even though accepted professional standards would not require such advance information, and (2) a plaintiff's testifying that had he known of an unforeseeable or unlikely injury he would not have consented to the recommended health care.

*Shwab*, 628 S.W.3d at 130 (emphasis added).

Woods contends the informed consent form he signed was "bare boned" and "deficient."[7] However, without expert testimony, there is no way of knowing whether the form used by Dr. Maki and Norton and signed by Woods fell within the accepted standard of practice in the medical profession in terms of the information it contained on its face.

Finally, Woods' argument that *res ipsa loquitur* is applicable is simply a repackaging of his previous arguments. The Kentucky Supreme Court has defined *res ipsa loquitur* in medical negligence cases. To wit,

> the term means nothing more than whether the facts and circumstances are such that negligence can be inferred, even in the absence of expert testimony. As Prosser explains, *res ipsa loquitur* is a "Latin phrase, which means nothing more than the thing speaks for itself," and is simply "[o]ne type of circumstantial evidence." *Prosser and Keeton on Torts*, Sec. 39 (5th ed. 1984). Speaking to how the doctrine applies to the "question of duty . . . in cases of medical malpractice," *Prosser* advises that "ordinarily" negligence cannot be inferred simply from an "undesirable result"; expert testimony is needed. *Id.* at 256.

*Perkins*, 828 S.W.2d at 654-55.

This Court has previously identified that any exceptions to having an expert in a medical negligence case lie within the doctrine of *res ipsa loquitur* (*i.e.*, when "any layman is competent to pass judgment and conclude from common

---

[7] *See* page 7 of Appellant's brief.

-11-

experience that such things do not happen if there has been proper skill and care"

or when "medical experts may provide a sufficient foundation for *res ipsa loquitur*

on more complex matters." *Andrew*, 203 S.W.3d at 170). Accordingly, we decline

to further address this argument.

## CONCLUSION

For the foregoing reasons, the order of the Jefferson Circuit Court is

affirmed.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Stephen P. Imhoff
Louisville, Kentucky

BRIEF FOR APPELLEES
ALEXANDRA C. MAKI, M.D. AND
COMMUNITY MEDICAL
ASSOCIATES D/B/A NORTON
SURGICAL ASSOCIATES:

David B. Gazak
Robert J. Shilts
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEES:

David B. Gazak
Louisville, Kentucky