Garnett GIBSON (as Executor and Personal Representative of the Estate of Topsie Gibson), Appellant/Cross–Appellee

v.

FUEL TRANSPORT, INC.,
Appellee/Cross–
Appellant.

and

Fuel Transport, Inc., Appellant/Cross–Appellee

v.

Garnett Gibson (as Executor and Personal Representative of the Estate of Topsie Gibson), Appellee/Cross–Appellant.

Nos. 2010–SC–000072–DG,
2010–SC–000682–DG.

Supreme Court of Kentucky.

March 21, 2013.

Rehearing Denied Oct. 24, 2013.

Adam Peter Collins, Nathaniel Leslie Collins, Campbell, Collins & Collins, PSC, Hindman, KY, for Appellant/Cross–Appellee.

Ronald L. Green, Green & Chestnut, PLLC, Carl William Walter, Boehl, Stopher & Graves, LLP, Lexington, Deborah H. Patterson, Virginia Hamilton Snell, Sara Christine Veeneman, Wyatt, Tarrant & Combs, LLP, Louisville, KY, for Appellee/Cross–Appellant.

Opinion of the Court by Justice
CUNNINGHAM.

On the night of November 2, 2004, a tractor trailer loaded with coal overturned while attempting to negotiate a curve on Highway 80 near the Knott–Floyd County line. The truck was owned by Fuel Transport, Inc. (hereinafter "Fuel Transport") and driven by its employee, Troy Vanderpool.

At the time of the accident, Roger Russell was driving a pickup truck coming from the opposite direction on Highway 80. Seventy-eight-year-old Topsie Gibson was a passenger in his truck. Russell's vehicle approached the curve a few moments after the tractor trailer had overturned. Because of the coal on the highway, Russell was unable to stop and he collided with the truck and trailer. As a result of this accident, Mrs. Gibson received injuries from which she subsequently died.

Garnett Gibson, in his capacity as executor and personal representative of the estate of Topsie Gibson (hereinafter "the Estate"), and Roger Russell filed a lawsuit in the Knott Circuit Court against both Vanderpool and Fuel Transport. The plaintiffs alleged ordinary negligence against Vanderpool in causing the accident, as well as vicarious liability in negligent entrustment on the part of Fuel Transport. The lawsuit also included a claim of gross negligence against Fuel Transport for failing to properly maintain the truck involved in the accident.

Russell eventually settled all of his claims; however, the Estate proceeded to trial against both Fuel Transport and Vanderpool. The jury unanimously found in favor of the Estate and awarded $2,121,371.31 in compensatory damages against both defendants and an additional $2,000,000.00 in punitive damages against Fuel Transport.

Fuel Transport and Vanderpool appealed the judgment. The Court of Appeals set aside the award of punitive damages, finding that "the record is devoid of clear and convincing evidence proving that the actions of Fuel Transport comprised gross negligence." The Estate then sought discretionary review by this Court, which was granted.

In its appeal to this Court, the Estate argues that the punitive damages award should be reinstated. Fuel Transport, in its cross-appeal, presents several additional issues for our review: (1) that the punitive damages award is unconstitutionally excessive; (2) that a new trial is warranted because the jury was inflamed by passion and prejudice; (3) that the pain and suffering award was unsupported by the evidence; (4) that the jury instructions were erroneous; (5) that a new trial should have been granted based on juror misconduct; and (6) that the trial court erred in refusing to transfer venue. Vanderpool did not appeal from the decision of the Court of Appeals. For the reasons set forth herein, we affirm the decision of the Court of Appeals.

### Punitive Damages

At trial, the Estate requested punitive damages against both Fuel Transport and Vanderpool. The trial court denied the

instruction as to Vanderpool. At the close of the Estate's evidence, Fuel Transport moved for a directed verdict on the issue of punitive damages, arguing that the evidence did not support a finding that it had engaged in conduct constituting gross negligence. It also argued that the Estate's evidence failed to establish Fuel Transport's allegedly negligent maintenance of the truck caused the accident.

The trial court denied the motion and the Court of Appeals reversed that decision. The Estate now advances several arguments as to why the award should be reinstated. Because we conclude that the evidence was insufficient to sustain a finding that Fuel Transport's negligent maintenance of the truck caused the accident, we need not reach the Estate's arguments in favor of reinstatement of the award.

### Standard of Review

■ When considering a motion for a directed verdict, the trial court must consider the evidence in a light most favorable to the opposing party, drawing all fair and reasonable inferences in that party's favor. *Lewis v. Bledsoe Surface Min. Co.*, 798 S.W.2d 459, 461 (Ky.1990). Upon completion of the foregoing evidentiary review, the trial court must determine "whether the evidence favorable to the party against whom the motion is made is of such substance that a verdict rendered thereon would be 'palpably or flagrantly' against the evidence so as 'to indicate that it was reached as a result of passion or prejudice.'" *NCAA v. Hornung*, 754 S.W.2d

855, 860 (Ky.1988) (quoting *Nugent v. Nugent's Ex'r*, 281 Ky. 263, 135 S.W.2d 877, 883 (1940)). On appeal, the reviewing court considers the evidence "in the same light." *Sutton v. Combs*, 419 S.W.2d 775, 777 (Ky.1967).

■ With this standard of review in mind, we turn to the specific question of punitive damages before the jury in this case. Punitive damages may be awarded upon a finding that the plaintiff acted with gross negligence. *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 51–52 (Ky.2003). "In order to justify punitive damages there must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by wanton or reckless disregard for the lives, safety, or property of others." *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389–90 (Ky.1985) (internal quotations omitted). KRS 411.184(2) requires that this reckless or wanton behavior be proven by the elevated standard of "clear and convincing evidence." [1]

### Evidence at Trial

Turning to the facts of this case, the Estate based its claim of gross negligence on Fuel Transport's failure to adequately and safely maintain its vehicle before putting it on the public roadways. The crux of the Estate's case was that Fuel Transport was aware of and disregarded a dangerous defect in the truck's fifth wheel. Though most key aspects of the case were contest-

---

1. Fuel Transport argues to this Court, as it did before the Court of Appeals, that the punitive damages instruction delivered in this case erroneously excluded the "clear and convincing" evidentiary requirement, as set forth in KRS 411.184(2). Fuel Transport relies on *Hardin v. Savageau*, 906 S.W.2d 356 (Ky. 1995), for the proposition that the jury must be specifically instructed on the heightened standard of proof. We will not address this

argument because it was not properly preserved for appellate review, as Fuel Transport did not tender a proposed instruction on punitive damages or object on these specific grounds. CR 51(3). As a result, we will not address the Estate's responsive argument that the "clear and convincing" evidentiary standard of KRS 411.184(2) violates the jural rights doctrine.

ed, we will consider the evidence in the light most favorable to the Estate.

Fuel Transport had purchased the truck from Linville Isaac about a week before the accident. At the time of the sale, Isaac believed that the truck had a defective fifth wheel, a coupling which attaches the truck to the trailer. The defect was identified as "slack" in a fifth wheel which would cause a noticeable "give and shimmy" in the trailer.

A few weeks before the accident involving Mrs. Gibson, Isaac was driving the truck when a different trailer came loose from the fifth wheel. Though acknowledging in his testimony that this was the result of the "wrong trailer" being attached to the truck, he nonetheless made some repairs to the fifth wheel, including installation of new bushings. After that, Isaac continued to drive the truck with "no problem" for a few more weeks, hauling coal five to seven times daily.

At the time he sold the truck to Fuel Transport, Isaac stated that he informed David Clifton, a Fuel Transport owner, that the fifth wheel was "wore out." He demonstrated the problem by using a pry bar to reveal the free "slack" on the wheel. Isaac testified that Vanderpool was also present during this conversation. However, Clifton and Vanderpool denied that Isaac ever gave them any warning about the fifth wheel. Fuel Transport made no further repairs or inspections of the fifth wheel between the time of purchase and the accident, though a general inspection of the truck, including its brakes, was conducted. Prior to the accident, Vanderpool did not experience any problems with the fifth wheel during the week that he drove the truck.

As to the exact cause of the accident, Vanderpool was uncertain. He opined that he had taken the curve in the road at too sharp of an angle and "over-corrected [the truck] really bad," causing it to turn over. He acknowledged that he was traveling five to ten miles over the speed limit. Though Vanderpool is not a mechanic, the Estate asked him whether the "mechanical features" of the truck could have caused the accident. Vanderpool responded, "Possibly."

Officer Dennis Hutchinson responded to the scene of the accident and inspected the truck immediately after it had overturned. He testified that he saw nothing wrong with the fifth wheel at that time, except that it was dry. However, later uncontroverted testimony established that the type of coupling on Fuel Transport's truck did not require lubrication.

Both the Estate and Fuel Transport presented expert testimony from accident reconstructionists. The Estate's expert, Joseph Stidham, testified that a defective fifth wheel, in combination with other factors such as speed or height of the cargo load, *could* cause a truck and trailer to overturn, as occurred here. Stidham also opined that Fuel Transport's truck was "going too fast and there was a mechanical failure in the truck." He did not identify any specific mechanical failure. Yet, he also testified that excessive speed alone could cause the vehicle to overturn.

### Insufficient Evidence of Causation

■ In moving for a directed verdict, Fuel Transport argued that there was insufficient evidence of causation and of gross negligence. While the issue of gross negligence has been thoroughly briefed in the present appeal, the issue of causation has not been expressly presented to this Court as grounds for reversal. Nonetheless, even when insufficiently raised on appeal, we will not disregard obvious error. CR 61.02.

Upon exhaustive review of the record, it is apparent that the Estate failed to estab-

lish what caused Fuel Transport's truck to overturn. Even accepting as true that Fuel Transport failed to properly maintain the fifth wheel, there is no evidence that the fifth wheel actually caused the accident. Vanderpool theorized that the truck toppled when he overcorrected on the sharp curve. Though presenting extensive testimony concerning the mechanics of a fifth wheel, Stidham ultimately offered *only* the limited opinion that the fifth wheel "could have" caused the accident. In short, the Estate was unable to establish what caused the accident beyond mere hypothesis.

■■ It is axiomatic that the Estate bore the burden of proving that Fuel Transport's negligence caused the accident. *McAtee v. Holland Furnace Co.,* 252 S.W.2d 427, 429 (Ky.1952). While this causal connection may be established by circumstantial evidence, such evidence "must indicate the probable, as distinguished from a possible cause." *Briner v. General Motors Corp.,* 461 S.W.2d 99, 101 (Ky.1970) (circumstantial evidence that automobile accident was caused by "some sort" of unspecified mechanical failure was insufficient to establish manufacturer's negligence). Stated otherwise, "[A] jury verdict must be based on something other than speculation, supposition or surmise." *Id.* The Estate's evidence, even when viewed in its most favorable light, established that Fuel Transport failed to inspect a possibly defective fifth wheel, which may have caused the truck to overturn.

Fuel Transport was entitled to a directed verdict with respect to punitive damages. To be sure, the trial court properly delivered a compensatory damage instruc-

tion to the jury, as the evidence that Vanderpool was speeding is sufficient to establish ordinary negligence. *See Kinney v. Butcher,* 131 S.W.3d 357, 359 (Ky.App. 2004). As a result of this conclusion, we need not address Fuel Transport's claim that the punitive damages award was unconstitutionally excessive or its claim that the award was based on passion and prejudice.[2]

### *Pain and Suffering Award*

■ On cross-appeal, Fuel Transport argues that the $2 million award for pain and suffering was excessive, and that the trial court failed to properly instruct the jury that pain and suffering damages could only be awarded for "conscious" pain and suffering. Neither of these arguments is preserved for appellate review. The trial court instructed the jury that it could award damages for "pain, suffering and mental anguish not to exceed $2,000,000.00." Fuel Transport did not specifically object to this limit on recovery. Rather, it argues that its objection to the award limit is preserved by its closing argument, in which it argued that an award of $150,000.00 for pain and suffering was appropriate. A closing argument does not preserve this error for review. Fuel Transport was required to make a specific objection to the jury instructions or tender proposed instructions reflecting a different award limit. CR 51(3). *See also Gersh,* 239 S.W.3d at 574 (finding objection to pain and suffering award was unpreserved where party failed to make specific objection to the award limit contained in the jury instructions).

Likewise, Fuel Transport did not ask for the jury to be instructed regarding "con-

2. To the extent that Fuel Transport argues that the alleged inflammatory evidence—David Clifton's affidavit—affected the compensatory damages award in addition to the punitive damages award, this error is unpre-

served for our review. Fuel Transport made this argument solely in the context of the punitive damages award to the Court of Appeals.

scious" pain and suffering until immediately before the instructions were read to the jury. Fuel Transport offered no supporting grounds or case law upon which to base its argument and failed to tender proposed jury instructions containing such language. Again, this claim of error has not been properly preserved for appellate review. CR 51(3).

### Juror Misconduct

 Fuel Transport argues that the trial court improperly denied its motion for a new trial based on juror misconduct. A trial court may grant a new trial based on juror misconduct upon demonstration that "a juror failed to answer honestly a material question on *voir dire*, and ... that a correct response would have provided a valid basis for a challenge for cause." *Adkins v. Commonwealth*, 96 S.W.3d 779, 796 (Ky.2003) (quoting *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984)); CR 59.01(b). The trial court must first determine if the grounds for a new trial under CR 59.01 exist, which will be reviewed for clear error. *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 72 (Ky. 2010). If such circumstances exist, the decision whether to grant a new trial lies within the sound discretion of the trial court: *Id.*

Fuel Transport argues that a juror, L.S., was not truthful in response to voir dire questioning. During voir dire, Fuel Transport asked the jurors if "they had ever been involved in an accident." Counsel pressed further by asking if anyone "had been involved in a car accident at all." L.S. did not respond and ultimately sat on the empanelled jury. After the verdict, L.S. indicated on her questionnaire that her father "was killed in an automobile accident and they deserved everything they got."

Fuel Transport now argues that, had it known L.S.'s father was killed in a car accident, it would have moved to strike her from the panel or used a peremptory challenge. Certainly, any defense attorney would have viewed the situation similarly. However, we agree with the trial court that L.S. did not conceal this information, so as to rise to the level of dishonesty.

The question posed by defense counsel is ambiguous and can be fairly interpreted to mean whether any potential juror himself had been directly involved in a car accident. Defense counsel did not ask if any juror's family member had been involved or had died in a car accident. Because defense counsel's question could reasonably be interpreted to inquire whether L.S. herself had ever been in a car accident, we do not find her failure to respond to be deceitful or misleading. Because there was insufficient evidence of juror misconduct, the trial court did not abuse its discretion in denying the motion for a new trial.

### Venue

 Fuel Transport's final claim on cross-appeal is that the trial court erred in refusing to transfer venue. KRS 452.105 requires a judge to transfer a case upon motion and finding that venue is improper. However, venue is not the equivalent of jurisdiction and can be waived if not timely raised. *Cabinet for Health & Family Services v. J.T.G.*, 301 S.W.3d 35, 42 (Ky.App. 2009). We agree with the trial court's conclusion that Fuel Transport waived any challenge to venue.

Gibson's complaint alleged that the collision occurred in Knott County. None of the parties reside in Knott County, nor is Fuel Transport's principal place of business in Knott County. Fuel Transport generally denied this venue allegation in its answer. A year later, Fuel Transport moved to amend its answer to more specif-

ically deny venue. In its brief to this Court, Fuel Transport explains that the initial police report did not specify in which county the accident occurred, but that a later supplemental police report indicated that it actually occurred in Floyd County. The trial court denied the motion.

We agree with the trial court that the challenge to venue was waived. By the time Fuel Transport moved the court to transfer venue, the parties had made numerous appearances and discovery had already been taken. Further, the issuance of the supplemental police report does not somehow justify Fuel Transport's failure to timely raise the issue of venue. It could have conducted an independent investigation of the exact location of the accident through Vanderpool or other witnesses. Under these circumstances, we agree with the trial court's conclusion that the issue of venue was waived by Fuel Transport's untimely motion. *Jaggers v. Martin*, 490 S.W.2d 762, 763 (Ky.App.1973). There was no abuse of discretion. *Shelley v. Hill*, 265 S.W.2d 34, 36 (Ky.1954) (trial court enjoys broad discretion in considering motions to amend).

### Conclusion

For the foregoing reasons, the opinion of the Court of Appeals is affirmed and this matter is remanded to the Knott Circuit Court with directions to vacate that portion of the judgment awarding punitive damages.

MINTON, C.J.; ABRAMSON, NOBLE, VENTERS and SCOTT, JJ., sitting. All concur.