RENDERED: JANUARY 7, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0646-MR

MARVIN MORRIS, M.D. AND
UNIVERSITY MEDICAL CENTER,
INC. D/B/A UNIVERSITY OF
LOUISVILLE HOSPITAL                                          APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE MITCH PERRY, JUDGE
                    ACTION NO. 17-CI-002453


DAVID BOERSTE, AS
ADMINISTRATOR OF THE ESTATE
OF CAROLYN D. BOERSTE;
TRILOGY HEALTHCARE OF
JEFFERSON, LLC D/B/A
FRANCISCAN HEALTH CARE
CENTER; KIMBERLY BRUMLEVE
M.D.; LOUISVILLE EMERGENCY
MEDICAL ASSOCIATES; MARK A.
NUNLEY, M.D.; CHARLOTTE A.
CRABTREE; VALERIE DAVIS;
WILLIAM GOODLETT; AND
UNIVERSITY SURGICAL
ASSOCIATES, PSC                                              APPELLEES

AND                              NO. 2020-CA-0754-MR

UNIVERSITY MEDICAL CENTER,
INC. D/B/A UNIVERSITY OF
LOUISVILLE HOSPITAL AND
MARVIN MORRIS, M.D.                                    APPELLANTS

                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE MITCH PERRY, JUDGE
                    ACTION NO. 17-CI-002453

DAVID BOERSTE, AS
ADMINISTRATOR OF THE ESTATE
OF CAROLYN D. BOERSTE;
TRILOGY HEALTHCARE OF
JEFFERSON, LLC D/B/A
FRANCISCAN HEALTH CARE
CENTER; KIMBERLY BRUMLEVE,
M.D.; LOUISVILLE EMERGENCY
MEDICAL ASSOCIATES; MARK A.
NUNLEY, M.D.; CHARLOTTE A.
CRABTREE; VALERIE DAVIS;
WILLIAM GOODLETT; AND
UNIVERSITY SURGICAL                                        APPELLEES
ASSOCIATES, PSC

AND                              NO. 2020-CA-0755-MR

DAVID BOERSTE, AS
ADMINISTRATOR OF THE ESTATE
OF CAROLYN D. BOERSTE                        CROSS-APPELLANT

CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCH PERRY, JUDGE
ACTION NO. 17-CI-002453

v.

UNIVERSITY MEDICAL CENTER,
INC. D/B/A UNIVERSITY OF
LOUISVILLE HOSPITAL; MARVIN
MORRIS, M.D.; CHARLOTTE A.
CRABTREE; VALERIE DAVIS;
WILLIAM GOODLETT; LOUISVILLE
EMERGENCY MEDICAL
ASSOCIATES; MARK A. NUNLEY,
M.D.; KIMBERLY BRUMLEVE, M.D.;
AND TRILOGY HEALTHCARE OF
JEFFERSON, LLC D/B/A
FRANCISCAN HEALTH CARE
CENTER; UNIVERSITY SURGICAL
ASSOCIATES, PSC                                      CROSS-APPELLEES

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  COMBS, GOODWINE, AND LAMBERT, JUDGES.

GOODWINE, JUDGE:  Carolyn D. Boerste[1] ("Boerste") brought a medical

negligence action against Appellants for leaving a surgical sponge in her abdomen

upon completion of surgery.  A jury awarded her a total of $10.5 million.

---

[1] Boerste passed away during the pendency of this appeal and her son David Boerste, as Administrator of the Estate of Carolyn D. Boerste, was substituted as Appellee/Cross-Appellant by order of this Court on November 24, 2021.

Appellants, University Medical Center ("University Hospital") and Marvin Morris, M.D. ("Dr. Morris") appealed. Boerste cross-appealed. After careful review, we affirm in part, reverse in part, and remand for the limited purpose of retrial on the issue of punitive damages due to erroneous jury instructions.

## BACKGROUND

Boerste had a history of peripheral vascular disease, hypertension, and diabetes. Her health conditions caused a wound on her toe to become infected and gangrenous. Dr. Morris recommended an aortobifemoral bypass surgery to improve circulation in her lower extremities and informed her she may need future surgeries, including amputation.

In March 2011, Dr. Morris and a surgical team performed the bypass surgery at University Hospital. The surgical team left a laparotomy sponge[2] in her abdomen, which was not removed until November 2016.

On May 18, 2017, Boerste filed suit against Appellants Dr. Morris, University Hospital, and the hospital's employees who performed the March 2011 surgery. Boerste also alleged claims against other medical professionals who failed to act on a radiologist's report that identified the retained sponge in her body in March 2015 and who otherwise contributed to her injuries. Boerste alleged she

---

[2] "The term 'sponge' is somewhat misleading. The 18 x 18-inch sponge is, in size, more like a towel." Brief for Appellee/Cross-Appellant, p. 1.

sustained injuries due to the retained sponge, including diarrhea, vomiting, nausea, and ultimately leg amputation. Boerste argued the sponge removal surgery resulted in amputation of her leg because she developed wounds on her lower extremities while bedridden following the removal of the sponge.

On the first day of trial, in December 2019, University Hospital conceded liability for leaving the sponge in Boerste's abdomen. As to the Hospital, the only remaining issue was damages, including punitive damages. As to Dr. Morris and the three other defendants, both liability and damages remained at issue.

Following a ten-day trial, the jury found Dr. Morris liable as well as two other defendants who were not before the circuit court. The jury found in favor of an emergency doctor who participated at trial. The jury apportioned 60% liability to the Hospital, 10% liability to Dr. Morris, and 30% liability to the two other defendants. The jury awarded Boerste $9.5 million in damages and an additional $1 million in punitive damages for a total verdict of $10.5 million.

University Hospital, Dr. Morris, and the other defendants then filed a motion for judgment notwithstanding the verdict, or in the alternative, motion for new trial. They raised the following six issues: (1) refusing to provide an apportionment instruction as to Boerste; (2) refusing to provide a mitigation instruction against Boerste; (3) a statement in Boerste's opening statement

regarding ability to collect a judgment against a third party not at trial; (4) the punitive damages instruction was improper based on failure to prove University Hospital's gross negligence; (5) the punitive damages instruction was improper based on failure to include statutory language; and (6) an alleged unfair surprise testimony in Boerste's expert's deposition regarding Dr. Morris's standard of care. The circuit court denied the motion. This appeal followed.

## ANALYSIS

### I.    ARGUMENTS ON APPEAL

On appeal, Appellants, University Hospital and Dr. Morris, argue: (1) a new trial is required because the circuit court failed to give instructions on apportionment of fault and mitigation of damages against Boerste; (2) a new trial is required because the pain and suffering award is grossly excessive and reflects improper jury sympathy or bias; (3) the punitive damages award must be vacated; and (4) the judgment against Dr. Morris must be vacated.

### A.    APPELLANTS WERE NOT ENTITLED TO AN INSTRUCTION ON APPORTIONMENT OF FAULT OR MITIGATION OF DAMAGES AGAINST BOERSTE.

First, Appellants argue they were entitled to instructions on apportionment of fault and mitigation of damages against Boerste for her failure to follow medical advice after the medical negligence. Appellants assert Boerste's actions after the sponge was left in her abdomen directly contributed to her

-6-

worsening health problems.  Specifically, they point to Boerste's failure to follow medical advice for follow-up care, to obtain the recommended podiatrist care, and to make necessary efforts to control her diabetes.

"[A] trial court's decision on whether to instruct on a specific claim will be reviewed for abuse of discretion[.]"  *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015), *overruled on other grounds by University Medical Center, Inc. v. Shwab*, 628 S.W.3d 112 (Ky. 2021).  Under this standard, we overturn a trial court's decision when it "is arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *Id.* at 203.

Here, in declining to give an apportionment instruction regarding Boerste's actions, the circuit court stated, on the video record, that it had extensively considered the issue during the two-week trial.  The circuit court determined *Pauly v. Chang*, 498 S.W.3d 394 (Ky. App. 2015), was "the only case that [came] close to answering, functionally, the policy reason for why we don't compare the negligence of a patient to the professional negligence of a doctor." Video Record ("VR") 12/12/19 at 6:09:48-6:10:03.  In *Pauly*, this Court held "a plaintiff's negligence that merely provides the occasion for the medical care, attention, and treatment that subsequently results in a medical malpractice action should not be considered by a jury assessing fault."  498 S.W.3d at 417.  Here, the circuit court quoted, "[t]he fact that a patient has injured himself, negligently or

non-negligently, has no bearing on the duty of the hospital and health care providers to treat him in accordance with the appropriate standard of care." *Id.* at 418. The circuit court further quoted *Pauly*:

> All patients, regardless of how they sustain an illness or injury, may reasonably expect competent treatment from those into whose hands they have placed themselves. . . . It would be inconsistent with the reasonable and normal expectations of both parties for the court to excuse or reduce the provider's liability simply because it was the patient's own fault that she required care in the first place.

*Id.* (citation omitted).

During the discussion of the possibility of an apportionment instruction, Appellants' rationale was that, had Boerste taken more proactive steps to manage her health, then amputation of her leg may not have been required because the sponge may have been found during other treatment. The circuit court disagreed based on its understanding of *Pauly*, finding under the specific facts of this case:

> The *res ipsa* thing [retained surgical sponge] happened in 2011, wasn't cured in 2016, so it defies policy reasons to me that we could blame the patient who didn't know. It's almost as if the argument is she should have taken an affirmative and more aggressive step to find out. I just do not, respectfully, think that is the law of Kentucky.

VR 12/12/19 at 6:12:28-6:12:50. Based on this analysis, the circuit court declined to provide an apportionment instruction against Boerste, but the court did not foreclose a mitigation of damages instruction at the time.

Based on our review, the circuit court correctly concluded there was no factual basis for instructions on apportionment of fault or mitigation of damages. Both require proof at trial of a party's negligence or lack of reasonable care that caused the injury. *See Pauly*, 498 S.W.3d 394. An apportionment instruction is appropriate when a patient's negligence was "an active and efficient contributing cause of the injury[.]" *Id.* at 416 (citation omitted). A mitigation instruction is appropriate when the plaintiff failed to act reasonably and there was specific evidence showing the plaintiff's actions "caused a worsening of her condition attributable to her failure to follow reasonable medical advice." *Morgan v. Scott*, 291 S.W.3d 622, 641 (Ky. 2009).

Here, Appellants failed to present evidence to support an instruction on either apportionment or mitigation. No one knew a sponge was retained in Boerste's abdomen, so she was not given specific instructions for follow-up care regarding the sponge. The evidence showed her body reacted to the foreign object and attempted to eliminate it. The retained sponge moved through her abdominal cavity and intestinal wall causing nausea, vomiting, and excessive diarrhea for five years. Ultimately, Boerste underwent surgery to remove the sponge, which she

had to recover from. The fact that Boerste was a poor patient who failed to properly treat her diabetes is irrelevant. She was a poor patient prior to the bypass surgery, and Appellants knew Boerste might ultimately need to have her lower leg amputated at the time of the bypass surgery. Therefore, we hold Appellants were not entitled to instructions on apportionment of fault or mitigation of damages.

## B. APPELLANTS FAILED TO PROPERLY PRESERVE THEIR PAIN AND SUFFERING ARGUMENT.

Second, Appellants argue they are entitled to a new trial because the pain and suffering award is grossly excessive and reflects improper jury sympathy or bias. Appellants failed to include a preservation statement for this argument in violation of CR[3] 76.12(4)(c)(v), and Boerste argues Appellants failed to preserve it. In reply, Appellants argue they preserved this issue in their motion for judgment notwithstanding the verdict or for new trial.

> CR 51 governs objections to jury instructions:
>
> (1) At any time before or during the trial, the court may direct the parties to tender written instructions. At the close of the evidence any party may move the court to instruct the jury on any matter appropriate to the issues in the action.
>
> (2) After considering any tendered instructions and motions to instruct and before the commencement of the argument, the court shall show the parties the written instructions it will give the jury, allowing them an opportunity to make objections out of the hearing of the

---

[3] Kentucky Rule of Civil Procedure.

jury. Thereafter, and before argument to the jury, the
written instructions shall be given.

(3) No party may assign as error the giving or the failure
to give an instruction unless he has fairly and adequately
presented his position by an offered instruction or by
motion, or unless he makes objection before the court
instructs the jury, stating specifically the matter to which
he objects and the ground or grounds of his objection.

Objections to jury instructions in a motion for judgment

notwithstanding the verdict are "too late" to preserve the argument for appeal.

*Scudamore v. Horton*, 426 S.W.2d 142, 146 (Ky. 1968). Furthermore, failure to

specifically object to any "not to exceed" amounts in "jury instructions or

tender[ed] proposed instructions" waives any later objection that the amounts were

excessive. *Gibson v. Fuel Transport, Inc.*, 410 S.W.3d 56, 61 (Ky. 2013). In

*Gibson*, the cross-appellant's objection to the award limit in its closing argument

did not preserve the argument for review. *Id.* Although the scenario in *Gibson*

differs, *Scudamore* made clear "CR 51 condemns such a practice and, in

consequence, we must hold they cannot now be heard on these matters."

*Scudamore*, 426 S.W.2d at 146 (quoting *Young v. De Bord*, 351 S.W.2d 502, 503

(Ky. 1961)). The purpose of CR 51 is to "enable the trial court to consider

appellant's theory." *Id.*

Here, Appellants did not object to the not to exceed amount for pain

and suffering damages until they filed the motion for judgment notwithstanding the

-11-

verdict. In fact, Appellants' tendered proposed instructions included the same dollar amount in the instructions the circuit court presented to the jury. Because Appellants did not contemporaneously object to the pain and suffering damages amount, they waived any objection and failed to properly preserve this argument for appeal. As such, we hold Appellants are not entitled to a new trial on pain and suffering damages.

## C. APPELLANTS ARE ENTITLED TO A RETRIAL ON PUNITIVE DAMAGES ONLY.

Third, Appellants argue the punitive damages award must be vacated. Appellants argue the circuit court erred in giving an instruction on punitive damages, which we review for abuse of discretion. *Zewoldi v. Transit Authority of River City*, 553 S.W.3d 841, 846 (Ky. App. 2018). Alternatively, Appellants argue the circuit court failed to correctly state the law in its punitive damage instruction, which we review *de novo*. *Id.* Appellants do not raise a constitutional challenge that the $1 million award is excessive.

We begin our analysis with a review as to whether there was sufficient evidence to warrant an instruction on punitive damages. In *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864 (Ky. 2016), the Supreme Court of Kentucky delineated "two different avenues for the recovery of punitive damages:

one statutory and one under common law." *Id.* at 870. First, "KRS[4] 411.184(2) provides for the recovery of punitive damages 'only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice.'" *Id.* Second, "punitive damages may also be awarded under the common law standard of 'gross negligence.' Gross negligence means a 'wanton or reckless disregard for the lives, safety, or property of others.'" *Id.* (quoting *Williams v. Wilson*, 972 S.W.2d 260 (Ky. 1998); *Gibson*, 410 S.W.3d at 59). As such, our Supreme Court stated "punitive damages may be awarded, when the evidence satisfies either the statutory standard of KRS 411.184(2), or the common law standard of gross negligence." *Id.*

However, when a plaintiff seeks punitive damages against an employer for the actions of its employees, KRS 411.184(3) applies: "In no case shall punitive damages be assessed against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question."

To determine whether there was sufficient evidence for an instruction on punitive damages against University Hospital, our analysis first requires us to determine whether the hospital staff's conduct "was sufficiently egregious to

---

[4] Kentucky Revised Statutes.

constitute gross negligence, the well-established common law standard for awarding punitive damages of gross negligence." *University Medical Center, Inc. v. Beglin*, 375 S.W.3d 783, 793 (Ky. 2011). Then, we must determine "whether it can be fairly found that University Hospital authorized, ratified, or reasonably could have anticipated that conduct" as required by KRS 411.184(3). *Beglin*, 375 S.W.3d at 793.

Evidence at trial showed a "wanton or reckless disregard," both through the nurses' actions and inactions and University Hospital's failure to provide adequate directions regarding sponge counts. There was significant confusion among the nurses as to how to document the sponge counts. In general, the nurses use a perioperative nursing record to document the surgical procedure. That record has a place to document some but not all the sponge counts required by University Hospital's policy. The nursing record has nowhere to document sponge counts that are supposed to occur at every break, lunch, and shift change. Nurse Charlotte Crabtree, the circulating nurse during Boerste's bypass surgery, testified that the form "could be more thorough." VR 12/3/2019 at 2:25:41-2:26:06. Nurses also use a worksheet to track sponge counts, but that worksheet does not become part of the medical record.

Dr. Verna Gibbs, a preeminent expert in retained foreign objects, who is recognized by the Joint Commission which provides guidance to hospitals in

-14-

preventing unintended retained foreign objects, refers them to her website "No Thing Left Behind." VR 12/6/19 at 10:24:41. She testified that the hospital nurses had variable practices for sponge counts and no common language was used for what they were doing. *Id.* at 11:40:00. She explained the "final" sponge count is particularly problematic. University Hospital's sponge count policy does not address the "final count" at all. *Id.* at 11:45:55. The words "final count" do not exist in the policy. Yet the electronic medical record has a place for the nurses to "document that they did a final count." *Id.* at 11:46:17. The "nurses variously interpret what the final count is," and "throughout all four of the workers" in this surgery, "they all have a different interpretation of that." *Id.* at 11:46:24. She concluded that the hospital is setting the nurses up to fail. The electronic medical record (which nurses must use to document) is not equal to what their policy guidelines are. The second closing count is not defined, so nurses each interpret it in their own way.

Nursing expert and educator, Cathy Kleiner, testified consistent with Dr. Gibbs. She testified it was important for the worksheet to be used consistently in the same way, so everyone knows what notations on the sheet mean. Although University Hospital had a sponge count policy, it gave its nurses "directions on how to use" the worksheet provided for sponge counts. VR 12/6/19 at 3:20:57. Without directions, the nurses were left "to decide the best way to use" the

-15-

worksheet. *Id.* at 3:21:00. If nurses are "doing things their own way, then I can't be sure of what was done for the patient or how it was done." *Id.* at 3:22:10. The nurses testified that they did not know what the other nurses' markings on the worksheet meant, which leaves the potential for exactly the typical critical error–an error that never should have happened–that occurred in this case.

Appellants did not call an expert witness to refute this testimony. Dr. Morris agreed that the failure, leaving the sponge in Boerste's abdomen, was potentially caused by the "system," which he said meant "the counting mechanism that was used that day." VR 12/3/19 at 4:38:35-4:38:53.

The foregoing testimony supports a finding of gross negligence under the common law standard of "wanton or reckless disregard" both through the nurses' actions and University Hospital's failure to provide proper directions regarding its sponge count policy. Thus, we turn to whether University Hospital "authorized or ratified or should have anticipated the conduct in question" under KRS 411.184(3).

Although Appellants argued below that KRS 411.184(3) applied, the circuit court did not address this statute in its motion denying University Hospital's motion for partial summary judgment on punitive damages or in its order denying University Hospital's motion for judgment notwithstanding the verdict or, alternatively, for a new trial. However, Boerste presented sufficient evidence that

University Hospital should have reasonably anticipated a sponge might be left in a patient when the worksheets provided to surgical teams did not include a place to record all sponge counts required by its policy.

As there was sufficient evidence to provide an instruction on punitive damages, we must address the language of the instruction. The circuit court instructed the jury that it could award punitive damages upon a finding that University Hospital, "by and through its nursing staff and employees . . . , acted with wanton or reckless disregard for the life and/or wellbeing of Carolyn Boerste." Record at 4381.

The punitive damages instruction did not include the KRS 411.184(3) language requiring a finding that University Hospital "authorized or ratified or should have anticipated the conduct in question." *See Thomas*, 487 S.W.3d 864; *Beglin*, 375 S.W.3d 783. Thus, we hold the circuit court erred as a matter of law in failing to include this language in the punitive damages instruction. On remand, the circuit court must include either the common law or KRS 411.184(2) standard for punitive damages *and* the KRS 411.184(3) language.

**D.    SUFFICIENT EVIDENCE SUPPORTS THE JURY'S FINDING OF LIABILITY AGAINST DR. MORRIS.**

Finally, Appellants argue the judgment against Dr. Morris must be vacated because there was no evidence he deviated from the standard of care. Dr. Morris preserved this issue during oral argument on his written motion for a

-17-

directed verdict on punitive damages. Although Dr. Morris did not include this argument in his written motion, he orally argued he should be granted a directed verdict on the issue of liability. The circuit court granted Dr. Morris's motion as to punitive damages but denied it as to his liability. We review a circuit court's denial of a motion for directed verdict under the following standard:

> When engaging in appellate review of a ruling on a motion for directed verdict, the reviewing court must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party. Once the issue is squarely presented to the trial judge, who heard and considered the evidence, a reviewing court cannot substitute its judgment for that of the trial judge unless the trial judge is clearly erroneous. In reviewing the sufficiency of evidence, the appellate court must respect the opinion of the trial judge who heard the evidence. A reviewing court is rarely in as good a position as the trial judge who presided over the initial trial to decide whether a jury can properly consider the evidence presented. Generally, a trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ. Where there is conflicting evidence, it is the responsibility of the jury to determine and resolve such conflicts, as well as matters affecting the credibility of witnesses. The reviewing court, upon completion of a consideration of the evidence, must determine whether the jury verdict was flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice. If it was not, the jury verdict should be upheld.

*Wright v. Carroll*, 452 S.W.3d 127, 132 (Ky. 2014) (quoting *Bierman v. Klapheke*, 967 S.W.2d 16, 18-19 (Ky. 1998)).

Generally, "the plaintiff in a medical negligence case is required to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. App. 2006) (citing *Johnson v. Vaughn*, 370 S.W.2d 591, 596-97 (Ky. 1963); *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982)). The expert opinion "must be based 'on reasonable medical probability and not speculation or possibility.'" *Id.* (quoting *Sakler v. Anesthesiology Associates, P.S.C.*, 50 S.W.3d 210, 213 (Ky. App. 2001)).

Here, Dr. Morris's own testimony supported the jury's finding that he was negligent. He testified he relies on nurses regarding sponge counts, but he does his own visual and tactile inspection of the abdominal cavity. Dr. Morris agreed that the standard of care required him to keep track of the sponges before closing. He testified that the surgeon and nurses are a team, and the entire team did not count the sponges correctly when finishing the bypass surgery.

Boerste presented expert testimony from Dr. Martin Borhani, a vascular surgeon. He testified Dr. Morris appropriately performed the surgery. However, Dr. Borhani confirmed a surgery can be performed appropriately, the surgeon can make a thorough examination of the wound, and a retained foreign body can still occur. Dr. Borhani concluded that leaving the sponge in Boertste's abdomen breached the standard of care, and he could not say whether Dr. Morris

or the nurses was more culpable. Although Dr. Borhani's testimony supports Dr. Morris's contention that he appropriately performed the surgery and still left the sponge in Boerste's abdomen, this was evidence for the jury to weigh.

Boerste also presented the expert testimony of Dr. Gibbs, a general surgeon. Dr. Gibbs confirmed Dr. Morris breached the standard of care when he failed to discover the sponge in Boerste's abdomen.

Appellants further argue that undisclosed, speculative, expert testimony about renal vein anomaly should have been excluded. Dr. Borhani concluded Dr. Morris appropriately performed the bypass surgery, but he then opined Dr. Morris likely nicked Boerste's renal vein during the procedure. He testified this likely caused excess bleeding and indirectly led to the loss of the sponge. Neither Dr. Gibbs nor Dr. Borhani testified Dr. Morris's handling of Boerste's vein anomaly deviated from the standard of care.

Testimony on this topic arguably should have been excluded under KRE[5] 403 and as improper speculation. However, Dr. Morris testified regarding the standard of care, and he agreed that the standard of care required him, as the surgeon, to keep track of sponges before closing the patient. His testimony alone was sufficient for the jury to determine whether he breached the standard of care. Thus, the admission of the improper speculation testimony was harmless error.

---

[5] Kentucky Rules of Evidence.

## II.    BOERSTE'S ARGUMENTS ON CROSS-APPEAL

On cross-appeal, Boerste argues the circuit court: (1) abused its discretion in excluding evidence regarding "never events" and (2) erred in not allowing counsel to discuss apportionment during opening statement and closing argument.

### A.    ANY REFERENCE TO "NEVER EVENTS" SHOULD BE EXCLUDED ON RETRIAL.

First, Boerste argues the circuit court abused its discretion in excluding evidence of or reference to "never events." University Hospital argues the term is confusing, not found in Kentucky negligence law, and would mislead the jury on standard of care. The hospital stipulated at the beginning of trial that the sponge was left inside Boerste by mistake, and there was no dispute at trial that a retained surgical sponge should never occur. Boerste argues in reply that there was evidence this was a "never event," and the associated Department of Health and Human Services standard regarding "never events" was relevant and should have been admitted. She asserts "never events" show foreseeability of this medical error, the injury should have been anticipated, and would have assisted the jury in assessing punitive damages.

Based on our review, the circuit court properly excluded this evidence. It was not admissible as expert testimony under KRE 702 because it was provided by unqualified witnesses. Furthermore, it was not admissible under KRE

403 because, although arguably relevant, the "probative value" of testimony regarding "never events" "is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury[.]" The jury did not need this evidence to find Boerste was entitled to punitive damages, so evidence of and reference to "never events" should be excluded on retrial.

**B.    APPORTIONMENT IS NOT RELEVANT TO THE ISSUE OF PUNITIVE DAMAGES AND SHOULD BE EXCLUDED ON RETRIAL.**

Second, Boerste argues the circuit court erred in not allowing counsel to discuss apportionment during opening statement and closing argument. This issue is not relevant on a retrial for punitive damages against University Hospital. Thus, it should be excluded.

## CONCLUSION

For the foregoing reasons, we affirm in part, reverse the judgment as to punitive damages, and remand the case for a limited retrial on the issue of punitive damages. We instruct the circuit court to include the language from KRS 411.184(3) in its punitive damages instruction.

ALL CONCUR.

BRIEFS FOR APPELLANTS/
CROSS-APPELLEES:

Karen L. Keith
Amy L. Cooper
Louisville, Kentucky

Griffin Terry Sumner
Allison W. Weyand
Louisville, Kentucky

BRIEFS FOR APPELLEE/
CROSS-APPELLANT:

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky

James M. Bolus, Jr.
Louisville, Kentucky

Nicholas Mudd
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANTS/CROSS-
APPELLEES:

Griffin Terry Sumner
Louisville, Kentucky

Karen L. Keith
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE/CROSS-APPELLANT:

Jamie K. Neal
Louisville, Kentucky