RENDERED:  NOVEMBER 21, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1221-MR

ASPYN, LLC, D/B/A ECONO LODGE
OF ERLANGER, KENTUCKY AND
SANJAY PATEL                                                          APPELLANTS


                    APPEAL FROM KENTON CIRCUIT COURT
v.                  HONORABLE PATRICIA M. SUMME, JUDGE
                    ACTION NO. 22-CI-01491


MARGARET PEROULAS, AS
ADMINISTRATOR AD LITEM FOR A
LIMITED PURPOSE OF THE ESTATE
OF ALEX CHRONIS                                                        APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, A. JONES, AND LAMBERT, JUDGES.

JONES, A., JUDGE:  This appeal arises from a judgment entered by the Kenton

Circuit Court following a jury verdict in favor of Appellee, Margaret Peroulas, as

Administrator *ad litem* for a limited purpose of the Estate of Alex Chronis, in a

premises-liability and wrongful-death action against Appellants, Aspyn, LLC d/b/a Econo Lodge of Erlanger, Kentucky, and Sanjay Patel, its member-manager.

The case stems from an incident in which seventy-six-year-old Alex Chronis sustained fatal third-degree burns after being scalded by excessively hot water while showering in his room at the Econo Lodge. The jury found Appellants negligent and awarded the Estate $1,271,486.60 in past medical expenses, $250,000 for pain and suffering, $16,058.73 for funeral expenses, and $500,000 in punitive damages, for a total award of $2,037,545.33. Following trial, Appellants moved for a judgment notwithstanding the verdict ("JNOV") and for a reduction of damages. They argued that (1) the evidence was insufficient as a matter of law to support a punitive-damages instruction or award; and (2) the medical-expense award should be reduced to exclude amounts written off by healthcare providers. The circuit court denied both motions.

On appeal, Appellants renew those arguments. For the reasons set forth below, we affirm the judgment of the Kenton Circuit Court in all respects.

## I. BACKGROUND

On November 18, 2021, Chronis checked into the Econo Lodge in Erlanger, Kentucky, owned and operated by Aspyn, LLC and managed by Sanjay Patel. Chronis, a traveling food vendor from Tennessee, was en route to a Christmas festival in Ohio, where he had worked in prior years. He shared Room

112 with his nephew, Nick Chronis, and a coworker, James Stone. The adjoining rooms in that wing of the hotel—Rooms 112 through 115—were serviced by a single commercial water heater installed in 2019 by Joe Rademacher of Joe's Plumbing Repair, LLC. The installation was performed without a required permit and was not subsequently inspected by local authorities.

Early the next morning, November 19, 2021, Chronis entered the shower in his room. Moments later, his companions heard a thud and his screams. They found him on the floor, covered in scalding water. Both of Chronis's legs were bright red with blisters forming. Although urged to seek medical care, he instead continued to the festival that day. His nephew treated his burns with over-the-counter ointment and bandages. Chronis later sought treatment at Miami Valley Hospital in Ohio, but he left against medical advice before being readmitted two days later. He remained hospitalized for nearly four months, undergoing multiple skin grafts and enduring significant complications. On April 6, 2022, he was transferred to a nursing facility in Knoxville, Tennessee, and later to Fort Sanders Medical Center, where he died on June 19, 2022, from cardiac arrest attributed to the sequelae of his burn injuries.

The Estate filed this action in Kenton Circuit Court on October 4, 2022, asserting claims of negligence, premises liability, and wrongful death. It alleged that Appellants failed to maintain a reasonably safe premises and acted

with wanton disregard for guest safety by failing to inspect, test, or regulate the hotel's hot-water system. Appellants denied liability and filed a third-party complaint against Rademacher and Joe's Plumbing Repair, alleging negligent installation of the water heater.

At trial in June 2024, evidence established that the water heater serving Chronis's room produced water temperatures between 150 degrees Fahrenheit and 155 degrees Fahrenheit—substantially higher than the 120 degrees Fahrenheit safety standard recommended for commercial lodging. Witnesses testified that the hotel had no written maintenance or testing procedures for water temperature, that Patel relied on the same plumber for periodic service, and that he was unaware of the heater's settings. A former guest had complained about the water in the bank of rooms at issue several months before the incident, but no inspection of the heater or testing of those rooms followed. The jury heard conflicting expert testimony regarding whether the hotel's omissions constituted ordinary or gross negligence.

The jury returned a verdict finding Appellants negligent in causing Chronis's injuries and death and further finding that their conduct constituted gross negligence warranting punitive damages. The jury did not attribute any fault to the third-party defendant, Joe's Plumbing Repair, LLC, or its owner, Joe Rademacher, concluding instead that responsibility rested solely with the hotel. It awarded the

Estate $1,271,486.60 in medical expenses, $250,000 for pain and suffering, $16,058.73 for funeral expenses, and $500,000 in punitive damages, for a total award of $2,037,545.33. Appellants moved for a JNOV and to reduce the medical-expense award to exclude $872,260.41 in amounts written off by medical providers. The circuit court denied both motions.

This appeal followed.

## II. ANALYSIS

Appellants raise two principal arguments on appeal. First, they contend the circuit court erred by submitting punitive damages to the jury because, in their view, the evidence did not support a finding of gross negligence. Second, they argue the court erred by refusing to reduce the award of medical expenses to reflect amounts written off by the medical providers. We address each argument in turn.

### A. *Punitive Damages*

Appellants erroneously assert that this Court must review the trial court's decision regarding punitive damages *de novo*. The *de novo* standard applies where an appellant challenges the language of a particular instruction such as whether the wording accurately states the law. *PBI Bank, Inc. v. Signature Point Condominiums LLC*, 535 S.W.3d 700, 720 (Ky. App. 2016). Here, however, Appellants do not challenge the form or substance of the instruction. Rather, they

argue that the trial court erred by submitting the issue of punitive damages to the jury at all. When the question is whether the evidence was sufficient to warrant an instruction, we review for an abuse of discretion. *Kentucky Guardianship Administrators, LLC v. Baptist Healthcare System, Inc.*, 635 S.W.3d 14, 20 (Ky. 2021).

> Our Supreme Court has explained:
>
> A decision to give or to decline to give a particular jury instruction inherently requires complete familiarity with the factual and evidentiary subtleties of the case that are best understood by the judge overseeing the trial from the bench in the courtroom. Because such decisions are necessarily based upon the evidence presented at the trial, the trial judge's superior view of that evidence warrants a measure of deference from appellate courts that is reflected in the abuse of discretion standard.

*Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015), *overruled on other grounds by University Medical Center, Inc. v. Shwab*, 628 S.W.3d 112 (Ky. 2021). A trial court abuses its discretion when its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

In *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864 (Ky. 2016), the Supreme Court of Kentucky delineated "two different avenues for the recovery of punitive damages: one statutory and one under common law." *Id.* at

870.  First, "KRS[1] 411.184(2) provides for the recovery of punitive damages 'only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice.'"  *Id.*  Second, "punitive damages may also be awarded under the common law standard of 'gross negligence.'  Gross negligence means a 'wanton or reckless disregard for the lives, safety, or property of others.'"  *Id.* (quoting *Williams v. Wilson*, 972 S.W.2d 260 (Ky. 1998); *Gibson v. Fuel Transport, Inc.*, 410 S.W.3d 56, 59-60 (Ky. 2013)).  As such, our Supreme Court stated:  "punitive damages may be awarded, when the evidence satisfies either the statutory standard of KRS 411.184(2), or the common law standard of gross negligence."  *Id.*

"The threshold for the award of punitive damages is misconduct involving something more than merely [the] commission of the tort."  *Fowler v. Mantooth*, 683 S.W.2d 250, 252 (Ky. 1984).  "[O]rdinarily the question of negligence, whether it be gross or ordinary, is one for a jury to determine."  *Darnell v. Hamilton*, 358 S.W.2d 361, 362 (Ky. 1962).

In *Louisville SW Hotel, LLC v. Lindsey*, the Supreme Court affirmed submission of punitive damages where a hotel exhibited systematic disregard of guest safety, ignoring basic protocols and warnings about a known hazard at its pool.  636 S.W.3d 508 (Ky. 2021).  The Court stressed that punitive exposure may

---

[1] Kentucky Revised Statutes.

rest on what an owner failed to do when dangers were foreseeable and within the premises owner's control. *Id.* at 514. Likewise, "[m]ultiple acts of negligence, each of which—if considered in isolation—might not support a finding of wantonness, may support a finding of gross negligence when considered alongside one another." *Id.*

Viewed in a light most favorable to the Estate, the evidence presented at trial showed that the Econo Lodge's management wholly failed to implement even rudimentary safeguards governing the hotel's water-heating system. Sanjay Patel admitted that he had never maintained any written maintenance checklists or protocols, had never adopted any procedures for inspecting or monitoring the hotel's water heaters, and had never used a thermostat to test the temperature of water in any guest room. He acknowledged that he had never read the manufacturer's manual for the water heater and had not followed any of the safety warnings it contained. Patel further conceded that he knew it was his responsibility to monitor the temperature of the hotel's water supply, that water above 120 degrees Fahrenheit presents a serious scald risk, and that 150 degrees Fahrenheit constitutes an unsafe condition. Yet, despite that knowledge, he ignored a desk-log entry made just a week before in which a guest staying in the same bank of rooms served by the heater at issue reported issues with the water

temperature.  No inspection of the heater or testing of the water in other rooms followed.

Appellant's own expert witness, Mark Cammack, P.E.,[2] elaborated on the gravity of these omissions.  He testified that industry standards require hotel owners to have systems for routine maintenance and periodic inspection of water-heating equipment and to read and comply with manufacturers' safety warnings.  According to Cammack, temperatures exceeding 120 degrees Fahrenheit pose a "severe burn risk," and water at 150 degrees Fahrenheit can cause third-degree burns in less than two seconds.

On this record, the trial court, having observed the witnesses and the evidentiary subtleties, determined the evidence would allow a reasonable jury to find wanton or reckless disregard by clear and convincing proof, and thus submitted punitive damages.  The court later denied JNOV on the same ground.  In light of the degree of deference we must show to the trial court, we cannot conclude that the court clearly erred.  Based on the evidence adduced at trial, the jury could certainly draw a reasonable inference that Appellants' conduct demonstrated an indifference to the goings-on related to the hot water heater and its maintenance.  In turn, the jury could reasonably conclude that this indifference created a condition that posed a serious risk to the life and safety of its guests.  We

---

[2] Professional Engineer.

are accordingly unable to conclude that the Estate failed to meet its burden of proof regarding punitive damages. *Louisville SW Hotel, LLC*, 636 S.W.3d at 515.

## B. Medical-Expense Award

Appellants next contend that the circuit court erred by refusing to reduce the jury's award of medical expenses to exclude the amounts written off by Mr. Chronis's healthcare providers.[3]  Because this issue concerns a question of law, our review is *de novo*. *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 445 (Ky. 2005).

Kentucky adheres to the long-standing collateral-source rule, which provides that a tortfeasor may not mitigate damages by showing that the injured party has received compensation or benefits from an independent source. *Baptist Healthcare Sys., Inc. v. Miller*, 177 S.W.3d 676, 682 (Ky. 2005).  The doctrine rests on three independent policy foundations:  (1) to deter wrongdoers from benefitting from their misconduct, (2) to ensure full compensation to the injured

---

[3] We note that no formal proof was introduced regarding the nature of the medical provider write offs.  The fact that an amount is "written off" internally does not necessarily mean it is not collectable.

> The term "written off" is a common business accounting term meaning only that the debt is removed from the internal bookkeeping procedures eliminating it as an accounts receivable.  However, until the applicable statute of limitations expires, there is no legal impediment to the creditor's pursuit of the debt.  In fact, "written off" accounts are frequently sold to collection agencies who receive a percentage of the amount collected and the balance returned to the creditor.

*Dennis v. Fulkerson*, 343 S.W.3d 633, 638 (Ky. App. 2011) (Thompson, J., concurring).

party, and (3) to allocate any windfall to the less culpable plaintiff rather than to the tortfeasor. *Id.* at 682-83.

This Court, following the Kentucky Supreme Court's reasoning in *Miller*, *supra*, applied the same principle in *City of Nicholasville Police Department v. Abraham*, 565 S.W.3d 639 (Ky. App. 2018). There, we held that amounts "written[]off and never subject to indemnification or paid by a third-party source" constitute collateral benefits that may not be used to reduce a verdict. *Id.* at 647. As explained in *Abraham*, as between the innocent injured party and the culpable defendant, "any so-called windfall . . . should accrue to the less culpable injured party rather than [relieve] the tortfeasor of full responsibility for his wrongdoing." *Id.* (quoting *Miller*, 177 S.W.3d at 682).

Appellants acknowledge these precedents but attempt to distinguish them, arguing that the collateral-source rule should not apply where, as here, the medical write-off resulted from the medical providers' unilateral decisions to reduce their bills for an uninsured patient rather than from payments by an insurer or Medicare. They contend that while a "windfall" may be justified when the plaintiff has paid insurance premiums, it is inequitable to allow such recovery when no premiums were paid, and no third-party source is involved.

As noted, in *Miller*, our Supreme Court articulated three independent rationales for the collateral-source rule, and only one—the insurance-premium

-11-

rationale—depends on a showing that the plaintiff contributed financially to the benefit. The remaining two rationales—deterring wrongdoing and ensuring full compensation—apply equally to write-offs for uninsured individuals. Moreover, this Court has applied the rule to Medicaid discounts, even though many recipients of Medicaid benefits personally pay no or very small premiums. *Abraham*, 565 S.W.3d at 646.

We decline Appellants' invitation to carve out a new exception for hospital write-offs. The circuit court correctly concluded that under *Miller* and *Abraham*, the collateral-source rule barred any post-trial reduction of the jury's medical-expense award. If the rule is to be narrowed in the manner Appellants propose, that decision lies with the Kentucky Supreme Court, not this Court. Therefore, we affirm the circuit court's ruling on this issue.

## III. CONCLUSION

For the foregoing reasons, the judgment of the Kenton Circuit Court is affirmed in all respects.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Melissa Thompson Richardson
Sarah E. Laytham
Lexington, Kentucky

BRIEF FOR APPELLEE:

N. Jeffrey Blankenship
Covington, Kentucky

Christopher T. Cain, *pro hac vice*
Knoxville, Tennessee